BLECHER & COLLINS, P.C.
Maxwell M. Blecher (State Bar No. 26202)
  *Mblecher@blechercollins.com*
Maryann R. Marzano (State Bar No. 96867)
  *Mmarzano@blechercollins.com*
Kristen M. Peters (State Bar No. 252296)
  *Kpeters@blechercollins.com*
515 South Figueroa Street, Suite 1750
Los Angeles, California 90071-3334
Telephone: (213) 622-4222
Facsimile: (213) 622-1656

Attorneys for Plaintiff VELTEX CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| VELTEX CORPORATION, a Utah Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> JAVEED AZZIZ MATIN, an individual; TANZILA SULTANA, an individual; SAASHA CAMPBELL, an individual; MAZHAR HAQUE, an individual; ALLEN E. BENDER, an individual; VELTEX USA, INC., a California corporation; VELTEX APPAREL, INC., a California corporation; VELTEX INDUSTRIES, INC., a Delaware corporation; VELTEX EXPLORER, INC., a Canadian corporation; VELTEX CANADA, INC., a Canadian corporation; WILSHIRE EQUITY, INC. *aka* WILSHIRE EQUITIES, INC., a Colorado corporation; AMERICAN REGISTER & TRANSFER CO., a Utah corporation; PATRICK R. DAY, an individual; RICHARD M. DAY, an individual; MOORE & ASSOCIATES, CHARTERED, a Nevada corporation; MICHAEL J. MOORE, an individual; CHISOLM, BIERWOLF, NILSON & MORRILL, CPA, a Utah limited liability company; BRAD B. HAYNES, an | CASE NO. CV10 1746 MMM (PJWx) <br><br> **PLAINTIFF VELTEX CORPORATION'S OPPOSITION TO DEFENDANT CARMINE BUA'S MOTION TO DISMISS** <br><br> Date:   June 7, 2010 <br> Time:   11:00 a.m. <br> Place:   Dept. 780, Courtroom of the Hon. Margaret M. Morrow <br><br> Complaint filed March 10, 2010 <br><br> [Filed concurrently with Request for Judicial Notice] |

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

---

PLAINTIFF VELTEX CORPORATION'S OPPOSITION TO DEFENDANT CARMINE BUA'S
MOTION TO DISMISS

individual; ANNE TAHIM, an
individual; JAAK U. OLESK, an
individual; and CARMINE J. BUA, an
individual,

                Defendants.

)
)
)
)
)
)
)

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

# TABLE OF CONTENTS

PAGE

I.   PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

III  LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    A.   The Complaint Adequately Pleads Falsity . . . . . . . . . . . . . . . . . .  8

    B.   The Complaint Raises A Strong Inference of Scienter  . . . . . . . . .  13

    C.   Plaintiff Adequately Pleads Scheme Liability . . . . . . . . . . . . . .  15

    D.   Plaintiff Adequately Pleads Loss Causation Under The PSLRA  .  16

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

PLAINTIFF VELTEX CORPORATION'S MEMORANDUM IN OPPOSITION TO DEFENDANT CARMINE
BUA'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

## CASES

Page(s)

Ackerman v. Schwartz,
947 F.2d 841 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Berson v. Applied Signal Tech., Inc.,
527 F.3d 982 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Burnett v. Rowzee,
561 F. Supp. 2d 1120 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Central Bank of Denver v. First Interstate Bank of Denver,
511 U.S. 164, 114 S. Ct. 1439 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Desaigoudar v. Meyercord,
223 F.3d 1020 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Eisenberg v. Gagnon,
766 F.2d 770 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.,
343 F.3d 189 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Eminence Capital, LLC v. Aspeon, Inc.,
316 F.3d 1048 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Herskowitz v. Nutri/System, Inc.,
857 F.2d 179 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Daou Sys., Inc.,
411 F.3d 1006 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Gilead Sciences Sec. Litig.,
536 F.3d 1049 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re GlenFed, Inc. Sec. Litig.,
42 F.3d 1541 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Nuko Info. Sys., Inc. Sec. Litig.,
199 F.R.D. 338 (N.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Silicon Graphics,
183 F.3d 970 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Vantive Corp. Sec. Lit.,
283 F.3d 1079 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- ii -

Kline v. First Western Government Sec.,
24 F.3d 480 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

McCabe v. Ernst & Young, LLP,
494 F.3d 418 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Navarro v. Block,
250 F.3d 729 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West
Holding Corp.,
320 F.3d 920 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Parrino v. FHP, Inc.,
146 F.3d 699 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ronconi v. Larkin,
253 F.3d 423 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rubin v. Schottenstein, Zox & Dunn,
143 F.3d 263 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Simpson v. AOL Time Warner Inc.,
452 F.3d 1040 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

South Ferry LP v. Killinger,
542 F.3d 776 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13, 14

Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,
552 U.S. 148, 128 S. Ct. 761 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
551 U.S. 308, 127 S. Ct. 2499 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 14

Thompson v. Davis,
295 F.3d 890 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Thompson v. Paul,
547 F.3d 1055 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Trust Company of Louisiana v. N.N.P., Inc.,
104 F.3d 1478 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Yourish v. Cal. Amplifier,
191 F.3d 983 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**STATUTES AND RULES**

15 U.S.C. § 78u-4(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15 U.S.C. § 78u-4(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

15 U.S.C. § 78u-4(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Central District Local Rule 7-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

- iii -

PLAINTIFF VELTEX CORPORATION'S MEMORANDUM IN OPPOSITION TO
DEFENDANT CARMINE BUA'S MOTION TO DISMISS

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Federal Rules of Civil Procedure, Rule 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

Federal Rules of Civil Procedure, Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . 6

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

PLAINTIFF VELTEX CORPORATION'S MEMORANDUM IN OPPOSITION TO
DEFENDANT CARMINE BUA'S MOTION TO DISMISS

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

## I.   PRELIMINARY STATEMENT

Contrary to the assertions in Defendant Carmine Bua's ("Bua") Motion to Dismiss, Plaintiff Veltex Corporation's ("Veltex" or "Plaintiff") Complaint satisfies the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Federal Rules of Civil Procedure, Rule 9(b). In its Complaint, Veltex alleges particularized facts demonstrating that Bua, acting with requisite scienter, was intricately involved in the "pump and dump scheme," and should be liable for the resulting economic losses suffered by the "unsuspecting investors" and Veltex itself.

Accordingly, Bua's Motion to Dismiss should be denied.[1]

## II.   STATEMENT OF FACTS

This matter involves a "pump and dump scheme" involving the stock of Veltex, a publicly traded company. Beginning in 2005 and continuing through early 2008, Defendants engaged in a scheme to issue millions of shares of Veltex stock illegally, without any public disclosure of the company's unsuccessful business operations or failing financial position. A large number of those shares were later sold to the public at a time when the company issued false and misleading press releases touting the company's prospects. The scheme was carried out by, among other Defendants in this action, Defendant Javeed Azziz Matin ("Matin"), the founder, largest shareholder, and until recently removed from that position, the Chief Executive Officer ("CEO") and Chairman of the Board of Veltex, and Defendant Patrick Day ("Day"), a member of the Veltex Board of

---

[1] It should be noted that counsel for Bua failed to comply with Central District Local Rule 7-3, which requires counsel contemplating the filing of any motion to "first contact opposing counsel to discuss thoroughly, *preferably in person*, the substance of the contemplated motion and any potential resolution" and to confirm in the notice of the motion that such conference has taken place. Central District Local Rule 7-3.

Directors and President of Veltex's transfer agent, Defendant American Register & Transfer Co. ("American Register"), with the assistance of two attorneys, Defendants Jaak U. Olesk ("Olesk") and Bua.

The "pump and dump scheme" was operated primarily through Defendant Wilshire Equity, Inc. *aka* Wilshire Equities, Inc. ("Wilshire Equity"), a Colorado corporation wholly owned and operated by Matin.[2]   Complaint ("Compl.") ¶¶ 15 & 55.  "Wilshire [Equity] was the vehicle that received the inflated, unrestricted and legend free Veltex common stock shares which were then sold to unsuspecting investors through several smaller, regional brokerage accounts in California and in Utah." Compl. ¶ 55.  Bua, who served as the outside "securities attorney" for Veltex, issued several letters to American Register opining that Veltex's securities offering was exempt from registration under SEC Rule 504 and certain Texas rules and that the shares could be issued without a restrictive legend. *See* Compl. ¶ 57 and Exhibit O attached thereto.  Bua received as compensation as much as $1,000.00 for each such letter he issued.  Compl. ¶ 57.  "Upon receipt of the 'authorization letter' . . . American Transfer would then issue the legend free and unrestricted shares to Wilshire Equity, and they would then be sold directly on the open market to unsuspecting members of the general investing public, or in turn transferred to other nominees controlled by Matin and the other Management Defendants, who then sold them to the public." Compl. ¶ 58.  Accordingly, Bua was instrumental in drafting the documents that resulted in the fraudulent issuance of the purportedly unrestricted Veltex shares at the heart of the fraud.

Despite a multitude of red flags pointing to a fraudulent scheme to evade the registration requirements of the federal securities laws, Bua authored a legal

---

[2]  Defendant Mazhar Haque ("Haque"), the Chief Financial Officer ("CFO") of Veltex during all relevant times covered by the Complaint, is also the Secretary and Treasurer of Wilshire Equity.  Compl. ¶¶ 8 & 15.

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   opinion on January 8, 2008 that directed Veltex's transfer agent to issue

2   approximately one million (1,000,000) purportedly unrestricted shares to Wilshire

3   Equity. *See* Compl. ¶ 57 and Exhibit O attached thereto. Bua opined that,

4   pursuant to Regulation D, Rule 504 and the Texas Statutes[3], Veltex "may issue the

5   Shares without a restrictive legend and that the Shares are available for immediate

6   resale by non-affiliates of [Veltex]." *See* Compl. ¶ 57 and Exhibit O attached

7   thereto. According to his Rule 504 letter, Bua based his "opinion" on his review

8   of: (1) the Veltex Board of Directors resolution authorizing the issuance of the

9   Shares; (2) Regulation D, Rule 504 of the Securities Act of 1933 (the "1933 Act"),

10  Section 4(2) of the Act and the Texas Securities Act as amended effective as of

11  September 1, 1999 (the "Texas Statutes") as they apply to the proposed issuance

12  of the Legend Free Shares; and (3) the written representations of a Veltex officer

13  that (a) was not a "reporting company," at the time the Shares were purchased, (b)

14  it is an operating company with a specific business plan, (c) it has utilized Rule

15  504 within the last twelve (12) calendar months and such sale of securities

16  including the sale that is the subject of this legal opinion has not exceeded the sum

17  of $1,000.000, (d) the dollar amount of the present contemplated offering, and (e)

18  the subject investors qualify as "accredited investors" as the term is defined in

19  Regulation D, Rule 501." *See* Compl. ¶ 57 and Exhibit O attached thereto.

20      At the time he authored his opinion letter, Bua must have known that

21  Wilshire Equity was wholly owned by Matin, who was also the CEO and

22  Chairman of the Board of Veltex and that Matin was thus deemed an "affiliate" of

---

24      [3] According to his opinion letter, "Rule 109.3(c) of the Texas Rules

25  specifically exempts from the securities registration requirements of Section 7 of
    the Texas Act, the offer and sale of securities to an "accredited investor" as the
    term is defined in Regulation D, Rule 501(a)(1)-(4), (7) and (8) of the Securities

26  Act. Still further, Texas Rule 109.3(c) has no prohibition against general
    solicitation or advertising with respect to sales made to accredited investors." *See*

27  Compl. ¶ 57 and Exhibit O attached thereto.

28                                          3

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  Veltex.  Compl. ¶ 56.  Under the 1933 Act, "the Veltex shares transferred to

2  Wilshire [Equity] were required to bear a restrictive legend by the transfer agent at

3  the time the shares were issued, unless an attorney certifies that under Regulation

4  D, Rule 504 of the 1933 Act, that the proposed shares are 'legend free shares'."

5  Compl. ¶ 56.  In his Motion to Dismiss, Bua states that he relied upon

6  representations made to him by a Veltex officer, believed them to be true, and

7  issued his legal opinion based on these false representations.  *See* Memorandum of

8  Points and Authorities in support of Defendant Carmine Bua's Motion to Dismiss

9  Plaintiff's Claim for Relief for Securities Fraud Against Carmine Bua ("Def.

10  Mem.") at 9.  According to Bua, he never questioned anyone about the affiliate

11  relationship between Veltex, Matin and Wilshire.  Instead, Bua accepted his check

12  from Veltex and issued his legal opinion based on these false representations.  In

13  reliance on Bua's legal opinion letter, Day, Veltex's transfer agent and a Director

14  of Veltex, issued the 1,000,000 purportedly unrestricted and legend free shares to

15  Wilshire Equity.  Compl. ¶ 58.  Shortly thereafter, the shares would "be sold

16  directly on the open market to unsuspecting members of the general investing

17  public, or in turn transferred to other nominees controlled by Matin and the other

18  Management Defendants, who then sold them to the public."  Compl. ¶ 58.

19    Bua served as a one-man "opinion-mill" for unregistered penny stock

20  offerings, issuing several letters to Veltex's transfer agent opining that Veltex's

21  securities offering was exempt from registration under SEC Rule 504 and the

22  Texas Statutes and that the shares could be issued without a restrictive legend.

23  Between March, 2005 and June, 2006, Bua prepared at least eight (8) other false

24  504 D letters for Veltex authorizing the issuance of over four million (4,000,000)

25  shares of Veltex to Wilshire Equity as penny stocks.  *See* Compl. ¶ 57 and Exhibit

26  //

27  //

28                                          4

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   O attached thereto.[4]  Moreover, on May 22, 2008, the SEC charged Bua with

2   substantially similar violations of the registration and antifraud provisions of the

3   federal securities laws in Florida.  *See* Compl. ¶ 57; *see also* Request for Judicial

4   Notice, filed concurrently herewith, and Exhibit A attached thereto.  The SEC

5   charged Bua and others "with securities fraud for their participation in a fraudulent

6   scheme to evade registration requirements and engaging in a "pump and dump"

7   stock manipulation scheme."  *See* Request for Judicial Notice and Exhibit B

8   attached thereto; *see also* Request for Judicial Notice and Exhibit A attached

9   thereto.  According to a SEC press release about the charges, the SEC "settled

10  fraud charges against California-based securities attorney, Carmine J. Bua, who, as

11  he did here, authored a fraudulent legal opinion, which authorized the issuance of

12  purportedly unrestricted Global shares."  Request for Judicial Notice and Exhibit

13  B attached thereto.  "Upon the filing of the [SEC's] complaint, and without

14  admitting or denying the allegations in the complaint, Bua consented to the entry

15  of a final judgment permanently enjoining him from violating Section 5 of the

16  Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

17  and to a penny stock bar."  Request for Judicial Notice and Exhibit B attached

18  thereto; *see also* Request for Judicial Notice and Exhibit C attached thereto.  The

19  SEC Order issued in connection with Bua's settlement ordered Bua's suspension

20  from appearing or practicing before the SEC as an attorney.  Request for Judicial

21  Notice and Exhibit D attached thereto.

22  //

23  //

24

25  _____

26  [4]  The last page of Exhibit O to the Complaint is a document Veltex
    received from American Register that lists various stock transfers for which Bua
    wrote opinion letters.  He also facilitated the transfer of Veltex shares to Max
27  Capital, OTC Expert and Wantsing.  *See* Compl. ¶ 57 and Exhibit O attached
    thereto.

28

### III.   <u>LEGAL STANDARD</u>

A motion to dismiss under Federal Rules of Civil Procedure, Rule 12(b)(6) "tests the sufficiency of a claim." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  To survive a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts to state a claim that is plausible on its face. <u>Bell Atlantic Corp. v. Twombly</u>,  550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007).  In reviewing Bua's Motion to Dismiss, the Court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party.  <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir. 2002); <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007) ("faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true"). When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 705-06 (9th Cir. 1998) (superceded by statute on other grounds); *see also,* <u>In re Nuko Info. Sys., Inc. Sec. Litig.</u>, 199 F.R.D. 338, 341 (N.D. Cal. 2000) ("In a securities fraud action, the court may take judicial notice of public records outside the pleadings, including SEC filings.").

The PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation and the facts alleging scienter, *i.e.*, the defendant's intention to "deceive, manipulate, or defraud." <u>Tellabs</u>, 551 U.S. at 319, 127 S. Ct. at 2507.  To meet the first requirement, a plaintiff must (1) identify each statement alleged to have been misleading, (2) state the reason or reasons why the statement is misleading, and, (3) if an allegation regarding the statement

6

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    or omission is made on information and belief, state with particularity all facts on

2    which that belief is formed. *See* 15 U.S.C. § 78u-4(b)(1).[5]  A plaintiff may

3    demonstrate the false or misleading character of a statement by identifying

4    inconsistent contemporaneous statements made by or information available to

5    defendants.  Yourish v. Cal. Amplifier, 191 F.3d 983, 993 (9th Cir. 1999) (citing

6    In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1545 (9th Cir. 1994)).  To meet the

7    scienter requirement, plaintiffs must "state with particularity facts giving rise to a

8    strong inference that the defendant acted with the required state of mind."  15

9    U.S.C. § 78u-4(b)(2); Tellabs, 551 U.S. at 314, 127 S. Ct. at 2504; Berson v.

10    Applied Signal Tech., Inc., 527 F.3d 982, 987 (9th Cir. 2008) (required state of

11    mind is intent to deceive or with deliberate recklessness as to the possibility of

12    misleading investors).  To qualify as "strong" within the meaning of the statute, an

13    inference of scienter must be more than merely plausible or reasonable - it must,

14    accepting the allegations as true and taking them collectively, be cogent and at

15    least as compelling to the reasonable person as any opposing inference of non-

16    fraudulent intent.  Tellabs, 551 U.S. at 314-315, 322, 324, 127 S. Ct. at 2504-05,

17    2509, 2510.

18       Importantly, "courts must consider the complaint in its entirety . . . [t]he

19    inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong

20    inference of scienter, not whether any individual allegation, scrutinized in

21    isolation, meets that standard."  Tellabs, 551 U.S. at 310, 127 S. Ct. at 2502.

22    Thus, Tellabs counsels us to consider "**the totality of circumstances**, rather than

23

24       [5] Rule 9(b) of the Federal Rules of Civil Procedure, which imposes a

25    heightened pleading standard on claims sounding in fraud, also applies to
securities fraud claims.  Yourish v. Cal. Amplifier, 191 F.3d 983, 993 (9th Cir.

26    1999); *see also,* Desaigoudar v. Meyercord, 223 F.3d 1020, 1023 (9th Cir. 2000)
("The PSLRA modifies Rule 9(b).").  Accordingly, because the pleading standard

27    under the PSLRA is higher than that provided by Rule 9(b), to the extent that a
plaintiff has satisfied the strictures of the PSLRA, the complaint also is sufficient
under Rule 9(b).

28       7

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   to develop separately rules of thumb for each type of scienter allegation." <u>South</u>

2   <u>Ferry LP v. Killinger</u>, 542 F.3d 776, 784 (9th Cir. 2008) (emphasis added).  Even

3   "[v]ague or ambiguous allegations are now properly considered as a part of a

4   holistic review when considering whether the complaint raises a strong inference

5   of scienter." <u>Id</u>.

6        Additionally, a strong inference of scienter arises "[w]hen the allegations

7   are accepted as true and taken collectively," and a reasonable person would "deem

8   the inference of scienter at least as strong as any opposing inference." <u>Tellabs</u>,

9   551 U.S. at 326, 127 S. Ct. at 2511.  Equally, the Ninth Circuit has advised that

10  "[i]n this era of corporate scandal, when insiders manipulate the market with the

11  complicity of lawyers and accountants, we are cautious to raise the bar of the

12  PSLRA any higher than that which is required under its mandates." <u>No. 84</u>

13  <u>Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.</u>,

14  320 F.3d 920, 946 (9th Cir. 2003).

15       **A.    The Complaint Adequately Pleads Falsity**

16       Bua argues that Plaintiff has failed to assert its allegations of fraud against

17  Bua with any particularity. *See* Def. Mem.at 7-9.  While Bua admits that the

18  Complaint identifies Bua's false and misleading statement as the fraudulent

19  "504D" letter, Bua asserts that the Complaint "failed to state the alleged reason

20  that the Rule 504 Letters prepared by Bua were false or misleading." Def. Mem.

21  at 10-11.  More specifically, Bua states that "Plaintiff has failed to allege in its

22  Complaint what is false, fraudulent, or misleading about Bua's reliance on any of

23  the [information he relied upon in rendering his opinion], and has failed to allege

24  what was false, fraudulent, or misleading about any of Bua's resulting

25  conclusions." Def. Mem. at 9:6-9.  In support of this statement, Bua lists the

26  information upon which he relied in rendering his opinion and argues that "[n]o

27  facts alleged in the Complaint set forth which, if any, of the representations relied

28                                          8

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  upon by Mr. Bua . . . are alleged to have been false" and that "Bua's opinion is

2  based on his reliance upon these matters, which he believed to be true."  Def.

3  Mem. at 8-9.  Bua's position is not correct, and is belied by the factual allegations

4  set forth in the entirety of the Complaint.  Moreover, Bua conveniently ignores the

5  allegations in the Complaint that explain <u>precisely</u> what is false and misleading

6  about Bua's statements.

7      In addition to setting forth the statements Bua made in the Rule 504 letter

8  attached to the Complaint as Exhibit O, Bua purports to list "[t]he only allegations

9  in Plaintiff's cause of action for securities fraud related to Bua in Plaintiff's

10  Complaint."  *See* Def. Mem. at 3-6.  Relying solely on the limited excerpts *he*

11  quoted from the Complaint in his Motion to Dismiss, Bua argues that "Veltex has

12  failed to allege with particularity specific facts on crucial elements of the cause of

13  action against Bua."  Def. Mem. at 6.

14      However, Bua completely omits any reference to the allegations in the

15  Complaint regarding Wilshire Equity, the Colorado corporation owned entirely by

16  Matin and the vehicle that received the inflated, unrestricted and legend free

17  Veltex common stock shares which were then sold to unsuspecting investors.

18  Compl. ¶¶ 15 & 55.  Paragraph 56 of the Complaint states:

19          Because Wilshire was wholly owned by Matin, who was
            also the CEO and Chairman of the Board of Veltex, he
20          was deemed to be an 'affiliate' of Veltex, and under
            applicable law, *i.e.,* the 1933 Act, the Veltex shares
21          transferred to Wilshire were required to bear a restrictive
            legend by the transfer agent at the time the shares were
22          issued, unless an attorney certifies that under Regulation
            D, Rule 504 of the 1933 Act, that the proposed shares are
23          'legend free shares.'

24  The allegations regarding Wilshire Equity's relationship with Veltex and Matin

25  sufficiently allege what was false about the Rule 504 letters Bua prepared for

26  Veltex.  Bua's Rule 504 letters fraudulently authorized the issuance of legend free

27  and unrestricted Veltex shares by American Transfer which were then placed into

28                                         9

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  the accounts of Wilshire Equity.  The Rule 504 letters were false because the

2  representations relied upon by Bua failed to account for the affiliate relationship

3  between Veltex, Matin and Wilshire.  *See* Compl. ¶¶ 15 & 55-57.  These false

4  representations formed the basis for Bua's legal opinions that authorized issuance

5  of the legend free and unrestricted Veltex shares that go to the heart of the

6  defendants' fraudulent scheme.  Accordingly, the Complaint sufficiently asserts

7  what is false about the Rule 504 letter prepared by Bua.

8      Bua also argues that the Complaint "alleges no *facts* tending to show how

9  Bua was to have known [of the false representations], when he knew of them, and

10  from what source he learned them."  Def. Mem. at 11:6-9.  He further states that

11  "Plaintiff altogether fails to allege any facts showing Bua's knowledge of and or

12  participation in the alleged 'pump and dump scheme'."  Def. Mem. at 9:12-13.

13      As explained above, Bua's 504 D letters materially misrepresented the

14  relationship between Veltex, Wilshire Equity and Matin.  Bua argues that he based

15  his opinion, in part, upon representations made to him by a Veltex officer and that

16  he believed these representations were true.  Def. Mem. at 8-9.  However, "[a]n

17  attorney who undertakes to make representations to prospective purchasers of

18  securities is under an obligation, imposed by Section 10(b), to tell the truth about

19  those securities."  Thompson v. Paul, 547 F.3d 1055, 1063 (9th Cir. 2008)

20  (holding that the complaint satisfied the heightened standards of the PSLRA in

21  pleading a violation of Section 10(b) against an attorney).[6]  "When the opinion . . .

22  

23      [6]  In Thompson v. Paul, 547 F.3d 1055 (9th Cir. 2008), the Ninth Circuit
24  cited the following decisions from other circuits holding attorneys liable under
   Section 10(b) with approval.
       In Rubin v. Schottenstein, Zox & Dunn, 143 F.3d 263, 268 (6th Cir. 1998),
25  the Sixth Circuit posed the "fundamental question" of "whether enterprising
   attorneys may gratuitously tout their clients' securities unconstrained by the
26  general duty imposed by the securities laws not to make materially misleading
   statements in connection with the sale of securities."  Id. at 266.  The court
27  concluded that "while an attorney representing the seller in a securities transaction
   may not always be under an independent duty to volunteer information about the

28                                      10

1  is based on underlying materials which on their face or under the circumstances

2  suggest that they cannot be relied on without further inquiry, then the failure to

3  investigate further may support an inference that when the defendant expressed the

4  opinion it had no genuine belief that it had the information on which it could

5  predicate that opinion." Eisenberg v. Gagnon, 766 F.2d 770, 776 (3d Cir. 1985)

6  (holding that the law firm and an accounting firm that issued an opinion letter

7  verifying profit projections included in the offering memoranda "are liable if they

8  recklessly expressed opinions which they had good reason to believe were

9  baseless.")  Indeed, when an attorney "knows or has good reason to know that the

10  factual description of a transaction provided by another is materially different

11  from the actual transaction, it cannot escape liability simply by including in an

12  opinion letter a statement that its opinion is based on provided facts." Kline, 24

13  F.3d at 487; see also Herskowitz v. Nutri/System, Inc., 857 F.2d 179, 184 (3d Cir.

14

15  _____

financial condition of his client, he assumes the duty to provide complete and
16  nonmisleading information with respect to subjects on which he undertakes to
speak." Id. at 268.

17      Similarly, in Kline v. First Western Government Sec., 24 F.3d 480 (3d Cir.
1994), a law firm prepared opinion letters describing the tax consequences of
18  securities that its client was offering for sale.  Purchasers of the securities brought
suit under Section 10(b) against the firm that had prepared the letters.  The Third
19  Circuit noted that the firm prepared the letters with knowledge that they would be
presented to potential purchasers of securities.  The court held that the law firm
20  could be held liable under Section 10(b) for material misrepresentations and
omission in the letters: "We conclude . . . that attorneys may be liable for both
21  misrepresentations and omissions where the result of either is to render an opinion
letter materially inaccurate or incomplete." Id. at 485-86.

22      See also, Trust Company of Louisiana v. N.N.P., Inc., 104 F.3d 1478, 1491
(5th Cir. 1997) (where attorney representing seller of debt made material
23  representations of a material fact in a letter to a prospective purchaser of the debt,
court held that the attorney was liable under Section 10(b) because he "knowingly
24  and with scienter made material misstatements in connection with the purchase of
a security."); Ackerman v. Schwartz, 947 F.2d 841 (7th Cir. 1991) (where attorney
25  representing sellers of fraudulent tax shelters wrote an opinion letter stating that
purchasers of the shelters were entitled to federal tax credits and deductions, court
26  held that because the attorney knew that his letter would be used to sell the
shelters, he could be held liable under Section 10(b) for material
27  misrepresentations contained in the letter).

28                                          11

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    1988) (holding that a securities fraud claim against a bank that had issued an

2    opinion letter concerning the fairness of the transaction should be submitted to a

3    jury when the claim alleged that the bank knew that the assumptions on which it

4    based its opinions were unfounded).

5        As "Securities Attorney" for Veltex from 2005 through early 2008, Bua

6    churned out several opinion letters predicated on a Veltex officer's alleged

7    representations to him authorizing Veltex's transfer agent to issue legend-free

8    (unrestricted) shares to Wilshire Equity.  Even a cursory investigation would have

9    revealed that Veltex and Wilshire were affiliates and thus under the 1933 Act, "the

10   Veltex shares transferred to Wilshire were required to bear a restrictive legend by

11   the transfer agent at the time the shares were issued, unless an attorney certifies

12   that under Regulation D, Rule 504 of the 1933 Act, that the proposed shares are

13   'legend free shares'." Compl. ¶ 56.  Moreover, "once [a] fraudulent 504 D letter

14   was issued, Matin, or one of the other Management Defendants, would then send it

15   to American Register and request that the unrestricted stock shares be issued to

16   Wilshire Equity." Compl. ¶ 57 and Exhibit P attached thereto.  Nevertheless,

17   despite the fact that Matin, as 100% owner of Wilshire and CEO and Chairman of

18   the Board of Veltex, was obviously an affiliate of Veltex, Bua issued a legal

19   opinion stating that Veltex "may issue the Shares **without a restrictive legend**

20   and that the Shares are available for immediate resale by non-affiliates of

21   [Veltex]." *See* Compl. ¶ 57 and Exhibit O attached thereto (emphasis in original).

22       Accordingly, the Complaint alleges with sufficient particularity that Bua

23   must have known or recklessly disregarded that the factual predicates for the

24   purported legal opinions upon which he was relying were false and/or misleading.

25   Therefore, because Bua must have known or recklessly disregarded that his legal

26   opinion was based on false representations, the Complaint adequately alleges

27   falsity thus sufficiently ensuring that Bua receives notice of the nature of his

28                                                    12

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   participation in the fraudulent scheme.

2   **B.      The Complaint Raises a Strong Inference of Scienter**

3   As Bua states in his Motion to Dismiss, the PSLRA requires a plaintiff to

4   allege facts tending to show a strong inference of scienter.  *See* Def. Mem. at 12.

5   Indeed, the PSLRA requires that a complaint, "state with particularity facts giving

6   rise to a *strong inference* that the defendant acted with the required state of mind."

7   In re Vantive Corp. Sec. Lit., 283 F.3d 1079, 1084-85 (9th Cir. 2002) (citing 15

8   U.S.C. § 78u-4(b)(2) (emphasis added)).  Bua also correctly stated that a plaintiff

9   "must plead, in great detail, facts that constitute strong circumstantial evidence of

10  deliberately reckless or conscious misconduct."  In re Silicon Graphics, 183 F.3d

11  970, 974 (9th Cir. 1999).  A showing of "recklessness only satisfies scienter under

12  § 10(b) to the extent that it reflects some degree of intentional or conscious

13  misconduct."  Id. at 977.  It must be an "extreme departure from the standards of

14  ordinary care, and which presents a danger of misleading buyers that is either

15  known to the defendant or so obvious that the actor must have been aware of it."

16  Id. at 984.

17  In considering circumstantial evidence of scienter, the Court must adopt a

18  "holistic" approach, considering the evidence in its entirety and each competing

19  inference reasonably drawn therefrom.  Tellabs, 551 U.S. at 323-26, 127 S. Ct. at

20  2509-11.  The "inference that the defendant acted with scienter need not be

21  irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of

22  competing inferences.'"  Id. at 324, 127 S. Ct. at 2510 (citations omitted).

23  However, it "must be more than merely reasonable or permissible - it must be

24  cogent and compelling, thus strong in light of other explanations."  Id.  Moreover,

25  "[i]n assessing the allegations holistically as required by Tellabs, the federal courts

26  certainly need not close their eyes to circumstances that are probative  of scienter

27  viewed with a practical and common-sense perspective."  South Ferry, 542 F.3d at

28

13

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

784.

Bua completely misinterprets the PSLRA's pleading requirements for scienter in his Motion to Dismiss. Def. Mem. at 11-12. Although the PSLRA requires allegations sufficient to give rise to a *strong inference* of scienter, Bua focuses only on "a plain reading of the facts alleged by Plaintiff" in concluding that Veltex failed to show "any inference of wrongful state of mind." Def. Mem. at 12. Bua further states that "[o]ther than the[] conclusions [asserted in the Complaint of Bua's knowledge at the time], all other allegations related to knowledge of falsity are made by Plaintiff against other Defendants." Def. Mem. at 12. However, "[t]he inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Tellabs, 551 U.S. at 323-26, 127 S. Ct. at 2509-11.

The Ninth Circuit traditionally analyzes the overlapping requirements of falsity and scienter at the same time. Ronconi v. Larkin, 253 F.3d 423, 429 (9th Cir. 2001) (pleading requirements of PSLRA may be collapsed into single inquiry because analysis of both factors involves same facts). Accordingly, as explained in greater detail above, Bua's failure to perform any due diligence or investigation before issuing his legal opinion in the 504 D letters gives rise to a strong inference of deliberate recklessness. The fact that Bua issued baseless attorney opinion letters that allowed the transfer agent to issue the illegal shares suggests that, at minimum, he was deliberately reckless to the fact that he was involved in an unlawful "pump and dump scheme."

In his Motion to Dismiss, Bua suggests that his conduct was innocent and that he, too, was duped by the fraudulent scheme. However, the inference of scienter is particularly compelling given the fact that Bua is basically a one-man "opinion-mill" for unregistered penny stock offerings and was a necessary and

14

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

substantial participant in the unregistered public distribution of Veltex's stock. Indeed, the unregistered public distribution of Veltex stock would not have been possible without Bua's issuance of opinion letters to Veltex's transfer agent calling for the issuance of stock certificates that did not bear restrictive legends. Moreover, Bua has recently been charged by the SEC with similar activity in Florida. Compl. ¶ 57; *see also* Request for Judicial Notice and Exhibits A-D attached thereto. Additionally, the substantial compensation Bua received from Veltex for each false "504 D" letter he prepared - as much as $1,000.00 for each such letter - supports the inference that Bua acted with scienter. Compl. ¶ 57. Accordingly, accepting the allegations in the Complaint as true and taken collectively, the Complaint raises a strong inference of scienter - an inference that is at least as compelling as any opposing inference.

### C.   **Plaintiff Adequately Pleads Scheme Liability**

Although Veltex maintains that Bua made misstatements or omissions of material fact in violation of the PSLRA, the Complaint also states a claim against Bua under the theory of "scheme liability." *See* Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 159-60, 128 S. Ct. 761, 770 (2008). Under this theory, relevant deceptive acts include deception as part of a larger scheme to defraud the securities market." Burnett v. Rowzee, 561 F. Supp. 2d 1120, 1125 (C.D. Cal. 2008) (quoting Simpson v. AOL Time Warner Inc., 452 F.3d 1040, 1047 (9th Cir. 2006)). "Such an act is one that has the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." Burnett, 561 F. Supp. 2d at 1125. "There is no private 'aiding and abetting' or 'conspiracy' liability under § 10(b) of the Securities and Exchange Act, or Rule 10b-5 promulgated thereunder." Id. Accordingly, Bua may only be liable as a primary actor; "that is, he must have committed a deceptive act in furtherance of the scheme upon which Plaintiff relied." Id. at 1126; *see also* Central Bank of

15

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    Denver v. First Interstate Bank of Denver, 511 U.S. 164, 191, 114 S. Ct. 1439,

2    1455 (1994) ("Any person or entity, including a lawyer . . . who employs a

3    manipulative device or makes a material misstatement (or omission) on which a

4    purchaser or seller of securities relies may be liable as a primary violator under

5    10b-5, assuming all of the requirements for primary liability under Rule 10b-5 are

6    met."). "Mere allegations that a defendant committed a deceptive act, even one in

7    furtherance of a scheme to defraud investors, are insufficient." Burnett, 561 F.

8    Supp. 2d at 1126. "Instead, [the] Court [must] focus on the elements of reliance

9    and causation in order to determine whether [Bua's] deceptive acts . . . were the

10   proximate cause of Plaintiff's injury." Id.

11          Here, Bua committed a deceptive act (issuance of the 504 D letter) in

12   furtherance of the scheme upon which Veltex relied. Indeed, Bua's baseless legal

13   opinion letters were integral to the Defendants' fraudulent scheme to evade

14   registration requirements and issue the legend free and unrestricted Veltex shares.

15   Moreover, Bua's deceptive acts were the proximate cause of Veltex's injury.

16   **D.    Plaintiff Adequately Pleads Loss Causation under the PSLRA**

17          In his Motion to Dismiss, Bua states that Plaintiff failed "to show a nexus

18   between Bua's conduct and any loss suffered by Plaintiff." Def. Mem. at 13.

19   "[T]o prove loss causation, the plaintiff must demonstrate a causal connection

20   between the deceptive acts that form the basis for the claim of securities fraud and

21   the injury suffered by the plaintiff." In re Daou Sys., Inc., 411 F.3d 1006, 1025

22   (9th Cir. 2005); see also 15 U.S.C. § 78u-4(b)(4). The Ninth Circuit has

23   emphasized that "[s]o long as the complaint alleges facts that, if taken as true,

24   plausibly establish loss causation, a Rule 12(b)(6) dismissal is inappropriate." In

25   re Gilead Sciences Sec. Litig., 536 F.3d 1049, 1057 (9th Cir. 2008). In so holding,

26   the Ninth Circuit cited with approval decisions by other circuits suggesting that

27   loss causation is a fact-intensive inquiry better suited for determination at trial

28                                              16

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

than at the pleading stage." Id.; see McCabe v. Ernst & Young, LLP, 494 F.3d 418, 427 n.4 (3d Cir. 2007); Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 197 (2d Cir. 2003).

By drafting the essential legal documents needed to facilitate the stock sales through Wilshire Equity, Bua was a necessary participant in the transactions and played a substantial role in the unregistered and legend free transfers of Veltex shares and eventual sales to the public, who became, along with the corporation itself, victims of the scheme.  Without those letters, no legend free stock could have been issued. Bua's role in the scheme was therefore integral to its success. Accordingly, Veltex sufficiently pleads loss causation by alleging a causal connection between the impact of the fraud on the company's true financial condition and Bua's practices that concealed the truth.  In re Gilead Sciences Sec. Litig., 536 F.3d at 1056-58.

If the Court should find the Complaint deficient in some respect, Plaintiff respectfully requests leave to amend.  Leave to amend is to be granted with extreme liberality in securities fraud cases.  See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (holding that dismissing plaintiff's first amended complaint with prejudice was an abuse of discretion in securities fraud action).

**IV.   CONCLUSION**

Plaintiff submits that the Complaint adequately alleges that Bua drafted numerous legal documents, in the form of the 504D attorney opinion letters, in furtherance of a fraudulent scheme illegally to issue free trading shares of Veltex stock, and pursuant to those attorney opinion letters, Veltex's transfer agent was directed to and did improperly issue 1,000,000 shares to a related entity, Wilshire Equity, which in turn fraudulently sold them to members of the general investing public.

17

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    Based thereon, and for all of the foregoing reasons, Defendant Carmine

2  Bua's Motion to Dismiss Plaintiff's Claim for Relief for Securities Fraud against

3  Bua should be denied.

4  Dated: May 17, 2010                    Respectfully submitted,

5                                         BLECHER & COLLINS, P.C.
6                                         MAXWELL M. BLECHER
                                          MARYANN R. MARZANO
7                                         KRISTEN  M. PETERS

8

9                                         By:  /S/
10                                              MARYANN R. MARZANO
                                                Attorneys for Plaintiff
11                                              VELTEX CORPORATION

12  42163

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF VELTEX CORPORATION'S OPPOSITION TO DEFENDANT CARMINE BUA'S
MOTION TO DISMISS