O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VELTEX CORPORATION, | CV 10-1746 ABC (PJWx) |
| Plaintiff, | ORDER GRANTING MOTIONS TO DISMISS |
| v. | |
| JAVEED AZZIZ MATIN, et al., | |
| Defendants. | |

Pending before the Court are motions to dismiss filed by
Defendants Carmine Bua ("Bua"), Chisholm, Bierwolf, Nilson & Morrill,
CPA ("CBNM"), Anne Tahim ("Tahim"), Patrick Day, Richard Day, and
American Registrar and Transfer Co. ("ARTCO") (collectively,
"Defendants").  (See Bua Mot. (Docket # 125); CBNM Mot. (Docket #
126); Tahim Mot. (Docket # 124); Patrick Day, Richard Day & ARTCO Mot.
("Day Mot.") (Docket # 122).)  Plaintiff filed oppositions.  (Opp'n to
Bua Mot. (Docket # 129); Joint Opp'n to CBNM and Tahim Mots. ("Joint
Opp'n") (Docket # 131); Opp'n to Patrick Day, Richard Day & ARTCO Mot.
("Opp'n to Day Mot.") (Docket # 133).)  Defendants filed replies.
(Bua Reply (Docket # 138); CBNM Reply (Docket # 140); Tahim Reply
(Docket # 139); Patrick Day, Richard Day & ARTCO Reply ("Day Reply")

(Docket # 137).)  The motions came on for hearing on September 27, 2010.  Having reviewed the parties' arguments and the record, the Court hereby **GRANTS** the motions.

**I.   BACKGROUND**

This is a securities fraud case in which Plaintiff alleges that various defendants engaged in a "pump and dump" scheme to artificially inflate the value of Veltex stock by disseminating false information and then sell the inflated shares into the market.  (<u>See, e.g.</u>, First Amended Complaint ("FAC") ¶ 1.)  Plaintiff Veltex is an apparel company that claims that it was a victim of this scheme along with unsuspecting investors.  (FAC ¶¶ 1, 4.)  Plaintiff alleges that the pump and dump scheme "required planning and numerous participants, including lawyers, accountants and transfer agents."  (FAC ¶ 1.)  Some of those defendants are currently before the Court with pending motions to dismiss.

Defendant Bua acted as Plaintiff's securities attorney.  (<u>See</u> FAC ¶ 25.)  Plaintiff alleges that Bua rendered fraudulent opinion letters ("Rule 504D Letters") approving the issuance of legend free shares of Veltex stock.  (<u>See, e.g.</u>, FAC ¶¶ 25, 68-69, 71.)  Defendant CBNM is a certified public accounting firm that performed accounting work and consulting services for Plaintiff.  (FAC ¶ 21.)  Plaintiff alleges that CBNM's audit was faulty in various respects.  (<u>See, e.g.</u>, FAC ¶¶ 51-56.)  Defendant Tahim is a certified public accountant who performed accounting work for Plaintiff.  (FAC ¶ 23.)  Plaintiff alleges that Tahim's audit was faulty in various respects.  (<u>See, e.g.</u>, FAC ¶¶ 49-50.)  Defendant ARTCO is a corporate transfer agent engaged in facilitating the registry and transfer of corporate shares.

(FAC ¶ 16.)  Defendant Patrick Day was the President of ARTCO during certain periods, and was also a member of Plaintiff's Board of Directors.  (FAC ¶ 17.)  Defendant Richard Day held a variety of management positions with ARTCO and was a majority owner of ARTCO. (FAC ¶ 18.)  Plaintiff alleges that ARTCO, Patrick Day and Richard Day improperly issued legend free shares of Veltex stock.  (<u>See</u> FAC ¶ 72.) Plaintiff also alleges that the various defendants in Plaintiff's management, apparently including Patrick Day, engaged in various other misconduct.  (<u>See, e.g.</u>, FAC ¶¶ 32-34.)

## II.  STANDARDS

Defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff failed to state a claim upon which relief can be granted.  The Supreme Court has recently clarified the pleadings necessary to state a claim for relief sufficiently to withstand a motion to dismiss under Rule 12(b)(6). <u>See</u> <u>Ashcroft v. Iqbal</u>, __ U.S. ___, 129 S. Ct. 1937 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).  Rule 8(a)(2) requires a "short plain statement of the claim showing that the pleader is entitled to relief," which does not require "detailed factual allegations," but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  <u>Iqbal</u>, 129 S. Ct. at 1949.  A claim must be "plausible on its face," which means that the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>  In other words, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Twombly</u>, 550 U.S. at 555 (internal quotations

and alterations omitted).  Allegations of fact are taken as true and construed in the light most favorable to the nonmoving party.  See, e.g., Newdow v. Lefevre, 598 F.3d 638, 642 (9th Cir. 2010).[1]

If the court finds dismissal appropriate, it must decide whether to grant leave to amend.  Leave to amend under Rule 15(a) is "freely given when justice so requires."  In the Ninth Circuit, "[t]his policy is 'to be applied with extreme liberality.'"  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (per curiam) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)).  Dismissal without leave to amend is improper unless it is clear that the complaint cannot be saved by any amendment. Polich v. Burlington Northern, Inc., 942 F.2d 1467, 1472 (9th Cir. 1991).  Where the plaintiff makes a bare request for leave to amend unaccompanied by additional facts that could cure the defects in the complaint, however, that is a strong indication that the plaintiff has no additional facts to plead.  See In re Vantive Corp. Securities Litig., 283 F.3d 1079, 1098 (9th Cir. 2002), abrogation on other grounds recognized by South Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 784 (9th Cir. 2008).  Moreover, the Court's discretion is particularly broad in cases where leave to amend has been granted previously.  See Metzler Inv. GmbH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1071 (9th Cir. 2008).[2]

---

[1]  As discussed more fully below, some of Plaintiff's claims are subjected to heightened pleading standards.

[2]  Plaintiff previously requested – and was granted – leave to amend with respect to Defendants Bua, Tahim, and CBNM. (See June 28, 2010 Tr. at 14-18.)

III.      ANALYSIS

Defendants' pending motions raise a variety of arguments that they assert warrant dismissal of various of the claims asserted.  The Court addresses each below.

A.   First Cause of Action – § 12 Claim

The FAC raises a claim under § 12 of the Securities Act of 1933. (See FAC ¶ 85.)  That section provides that any person who "offers or sells a security" by means of untrue statements is liable "to the person purchasing such security from him."  15 U.S.C. § 77l(a). Hence, § 12 "permits suit against a seller of a security . . . only by 'the person purchasing such a security <u>from him</u>,' thus specifying that a plaintiff must have purchased the security directly from the issuer." <u>Hertzberg v. Dignity Partners, Inc.</u>, 191 F.3d 1076, 1081 (9th Cir. 1999) (emphasis in original).  This poses two problems for Plaintiff.  First, Plaintiff has not alleged that it actually purchased securities at all, which makes its claim as currently pled defective as to all Defendants.  Plaintiff contends that it in fact did make at least one such purchase, however. (Peters Decl. ¶ 8, Ex. F.)  Accordingly, with respect to that defect, this claim is **DISMISSED** without prejudice as to all moving Defendants.  If Plaintiff amends this claim, it should specify which of the remaining Defendants sold securities to Veltex.

Second, Tahim argues that Plaintiff did not purchase any securities <u>from her</u> as required under § 12. (See Tahim Mot. at 10.) The Ninth Circuit has made clear that an accountant "merely performing professional services, without actively soliciting a purchase of the underlying securities, does not give rise to liability under section 12." <u>Moore v. Kayport Package Exp., Inc.</u>, 885 F.2d 531, 537 & n.5

(9th Cir. 1989); <u>see also</u> <u>In re: Worlds of Wonder Securities Litig.</u>, 694 F. Supp. 1427, 1435 (N.D. Cal. 1988) (dismissing claims against accountants who finalized registration statement and prospectus and caused registration statement to become effective). Plaintiff fails to address this authority in opposition, and instead notes that claims against accountants are not categorically barred. (<u>See</u> Joint Opp'n at 18-19.) But Plaintiff does not provide an explanation why the <u>particular allegations against this accountant</u> pass muster under Ninth Circuit law. Accordingly, this claim is **DISMISSED** with prejudice as to Tahim.

**B.   First Cause of Action – § 17(a) Claim**

The FAC raises a claim under § 17(a) of the Securities Act of 1933. (<u>See</u> FAC ¶ 85.) This claim fails as a matter of law because there is no private right of action under § 17(a). <u>In re Washington Public Power Supply Sys. Sec. Litig.</u>, 823 F.2d 1349, 1358 (9th Cir. 1987) (en banc) ("no private right of action lies under section 17(a)"). That claim is **DISMISSED** with prejudice against all moving Defendants.

**C.   First Cause of Action – § 10b-5, Rule 10(b)-5 Claim**

To state a claim under § 10(b) and Rule 10b-5, a plaintiff must allege: (1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which the plaintiff relied (5) which proximately caused its injury. <u>DSAM Global Value Fund v. Altris Software, Inc.</u>, 288 F.3d 385, 388 (9th Cir. 2002) Such claims are subject to heightened pleading requirements. Federal Rule of Civil Procedure 9(b) requires allegations of fraud be pled with particularity. <u>See, e.g.</u>, <u>Desaigoudar v. Meyercord</u>, 223 F.3d 1020, 1023 (9th Cir. 2000). The Private Securities Litigation Reform Act of 1995 ("PSLRA")

modifies Rule 9(b) to add further pleading requirements for securities claims.  See id.  The PSLRA was designed to eradicate "pleading fraud by hindsight."  In re: Daou Sys., Inc., 411 F.3d 1006, 1021 (9th Cir. 2005).  "Under the PSLRA's heightened pleading instructions, any private securities complaint alleging that the defendant made a false or misleading statement must: (1) specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading; and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321 (2007) (internal citations and quotations omitted).  The Ninth Circuit has traditionally analyzed these overlapping issues as a single inquiry.  See, e.g., Ronconi v. Larkin, 253 F.3d 423, 429 (9th Cir. 2001).  The Court therefore must determine whether "particular facts in the complaint, taken as a whole, raise a strong inference that defendants intentionally or [with] 'deliberate recklessness' made false or misleading statements to investors."  Id.

     The Supreme Court has provided guiding principles in determining whether that pleading standard has been met.  First, the Court is to accept all factual allegations as true.  Tellabs, 551 U.S. at 322. Second, the Court must look to the allegations in the complaint in their entirety.  Id.  Third, the court must take into account plausible competing inferences.  Id. at 323.  "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  Id. at 324.

          1.   Bua

     Bua's challenge to the sufficiency of the FAC focuses on whether

1  Plaintiff sufficiently pled scienter.  (See Bua Mot. at 7-11.)

2  Plaintiff alleges that Bua drafted at least 33 Rule 504D Letters

3  approving the issuance of unrestricted, legend free Veltex common

4  stock.  (FAC ¶ 69.)[3]  Plaintiff argues that no securities law

5  exemption was available, and that the Rule 504D Letters were premised

6  on misrepresentations that Wilshire Equity was a Texas resident and

7  that Veltex, Javeed Matin ("Matin") and Wilshire Equity were

8  unaffiliated.  (See Opp'n to Bua Mot. at 4-8, 12; see also FAC ¶ 71.)[4]

9  Plaintiff argues that, despite receiving these facts from Matin and

10  others at Veltex, Bua actually knew, or with deliberate recklessness

11  disregarded, that his Rule 504D Letters were false.  (See Opp'n to Bua

12  Mot. at 12; see also FAC ¶ 71(a).)[5]

13  _____

14      [3]  Bua was compensated up to $1,000 for each of the letters.
(FAC ¶ 69.)

15      [4]  Matin was the CEO and Chairman of the Board of Veltex.  (FAC ¶
16  5.)  Wilshire Equity "was the vehicle that received the inflated,
    unrestricted and legend free Veltex common stock shares which were
17  then sold to unsuspecting investors through several smaller, regional
    brokerage accounts in California and in Utah."  (FAC ¶ 66.)  Plaintiff
18  alleges that, "[b]ecause Wilshire Equity was wholly owned by Matin,
    who was also CEO and Chairman of the Board of Veltex, he was deemed to
19  be an 'affiliate' of Veltex, and under applicable law . . . the Veltex
    shares transferred to Wilshire were required to bear a restrictive
20  legend by the transfer agent at the time the shares were issued,
    unless an attorney certifies that under Regulation D, Rule 504 . . .,
21  the proposed shares are 'legend free shares.'"  (FAC ¶ 67.)

22      [5]  The parties differ in their categorization of Plaintiff's
23  claim.  Bua views the claim as being based on his issuance of a false
    or misleading statement.  (See Reply at 5 ("The claim must be pled
24  with specific facts to show a defendant made a false or misleading
    statement and the defendant had the requisite scienter when he made
25  such statement.").)  Plaintiff views the claim as arising under a
    "scheme liability" theory.  (Opp'n to Bua Mot. at 11.)  A defendant
26  may be liable under a "scheme liability" theory where he engaged in a
    deceptive act as part of a larger scheme to defraud the securities
27  market where that act has the principal purpose and effect of creating
    a false appearance of fact in furtherance of the scheme.  See, e.g.,
28  Burnett v. Rowzee, 561 F. Supp. 2d 1120, 1125 (C.D. Cal. 2008).  The

8

1   "An attorney who undertakes to make representations to

2   prospective purchasers of securities is under an obligation, imposed

3   by Section 10(b), to tell the truth about those securities."   Thompson

4   v. Paul, 547 F.3d 1055, 1063 (9th Cir. 2008).  Of course, those

5   attorneys must have the requisite scienter to be held liable.

6   Scienter exists where there is "a highly unreasonable omission,

7   involving not merely simple, or even inexcusable negligence, but an

8   extreme departure from the standards of ordinary care."   DSAM Global

9   Value Fund, 288 F.3d at 389(quoting Hollinger v. Titan Capital Corp.,

10  914 F.2d 1564, 1569 (9th Cir. 1990)).  The Third Circuit has found

11  that a lawyer's reliance on information provided by his client and

12  failure to investigate is probative of scienter only where he knows or

13  has good reason to know that the facts provided are inaccurate.  See

14  Kline v. First Western Government Sec., Inc., 24 F.3d 480, 486 (3d

15  Cir. 1994) ("When the opinion . . . is based on underlying materials

16  which on their face or under the circumstances suggest that they

17  cannot be relied upon without further inquiry, then the failure to

18  investigate further may 'support an inference that when the defendant

19  expressed the opinion it had no genuine belief that it had the

20  information on which it could predicate that opinion.'" (quoting

21  Eisenberg v. Gagnon, 766 F.2d 770, 776 (3d Cir. 1985))).

22      Plaintiff has not met that standard.  For example, Plaintiff

23  alleges that "Bua knew, or consciously and recklessly disregarded" the

24  affiliate relationship between Veltex, Matin and Wilshire Equity.

25  (See FAC ¶ 71(a).)  Plaintiff argues that such scienter can be

26

27  parties do not delineate any difference in the scienter requirement
    between the two types of claims, and the Court deciphers none.  (See
28  June 25, 2010 Minute Order at 4 n.2.)

9

inferred because Bua had good reason to distrust his client's contrary representations in light of the similarities in the signatures on Bua's paychecks from Veltex and the signature on behalf of Wilshire Equity on Securities Purchase Agreements.  (See FAC ¶ 71(a).)[6]  It is theoretically possible that an attorney may have recognized the similarity in signatures on these unrelated documents.  But Plaintiff fails to provide authority that attorneys are expected to sleuth through seemingly unrelated documents in an attempt to detect inaccuracy in facts provided by their clients.[7]

    With respect to the alleged misrepresentation that Wilshire Equity was a Texas resident, Bua issued a letter advising that Pennsylvania law had been reinterpreted to provide stricter legend requirements, making Texas law more favorable.  (See FAC ¶ 71(f), Ex. 41.)  While Plaintiff points to the fact that Bua's subsequent Rule 504D Letters switched Wilshire Equity from a Pennsylvania to a Texas resident, Plaintiff fails to consider the plausible inference that Bua believed Wilshire Equity actually became a Texas resident in response to his opinion that Texas law was more beneficial than Pennsylvania

---

    [6] These were not Matin's signatures, but allegedly the signature of Mazhar Haque. (FAC ¶ 71(a).)  His name is not typed on the signature page.  (See FAC Exs. 36-37.)

    [7] Nor does the Court find persuasive Plaintiff's allegation that Bua was put on notice by Richard Day of unrelated errors in his letters.  There is no indication that Bua failed to correct any errors identified or that he was provided notice that any of the alleged misrepresentations at issue in the pending motion were inaccurate.  Plaintiff's opposition indicates that Bua was "frequently" notified of inaccuracies in his Rule 504D Letters.  (See Opp'n to Bua Mot. at 18.)  Of the allegedly 33 or more Rule 504D Letters drafted by Bua for Veltex, Plaintiff identified two instances of inaccuracies being pointed out to him.  (See FAC ¶¶ 69, 71(b), 71(c).)  Plaintiff also alleges an instance in which Bua provided an explanation to Richard Day as to the basis of his opinion.  (See FAC ¶ 71(e).)

1    law.  <u>Tellabs</u>, 551 U.S. at 324 (scienter is sufficiently alleged "only

2    if a reasonable person would deem the inference of scienter cogent and

3    <u>at least as compelling as any opposing inference one could draw from</u>

4    <u>the facts alleged</u>." (emphasis added).)  Plaintiff fails to adequately

5    explain why Bua should have doubted that Wilshire Equity actually

6    became a Texas resident after he had opined that Texas law was more

7    beneficial.[8]

8         The ultimate question on a motion to dismiss is whether the

9    allegations as a whole, including even vague and ambiguous

10   allegations, raise a strong inference of scienter.  <u>South Ferry</u>, 542

11   F.3d at 784.  While the FAC moved Plaintiff closer to raising a strong

12   inference of scienter, taking the FAC's allegations as a whole it

13   still fails to do so.  The Court will therefore allow Plaintiff one

14   further opportunity to allege this claim against Bua in accord with

15   the pleading requirements of the PSLRA.  This claim against Bua is

16   **DISMISSED** with leave to amend.

17        2.   <u>CBNM</u>

18   CBNM's challenge to the sufficiency of the FAC focuses on whether

19   Plaintiff sufficiently pled falsity or scienter.  (CBNM Mot. at 2-5.)

20   Plaintiff alleges that CBNM was hired in September 2004 by Veltex to

21   perform an audit for its financial statements as of December 31, 2003.

22   (FAC ¶ 52.)  CBNM did in fact perform that audit.  (FAC ¶ 52, Ex. 30.)

23

24        [8]  Indeed, Plaintiff provides little factual support for its
     apparent contention that Wilshire Equity was not actually a Texas
25   resident at that time.  Plaintiff states in a footnote that Wilshire
     Equity shared the same Texas address as other entities who were issued
26   Veltex unrestricted shares.  (<u>See</u> Opp'n to Bua Mot. at 6 n.7; FAC ¶
     71(g).)  Plaintiff failed to sufficiently explain why this allegation
27   shows that Wilshire Equity was not a Texas resident and/or why it
     supports an inference of scienter.
28

Plaintiff does not allege that any of the financial information in the financial statements audited by CBNM was false.  For example, CBNM reported that the financial statements accurately reflected that Veltex had a net loss of $1.8 million.  (See FAC Ex. 30.)  Plaintiff does not dispute the accuracy of that figure.

Instead, Plaintiff argues that CBNM "falsely represented" that it had complied with accepted auditing standards when, in fact, it had not.  (See Joint Opp'n at 10.)  Plaintiff failed to sufficiently explain why an outside auditor can be held liable for securities fraud based solely on its failure to comply with accounting standards when that failure in no way impacted the substance of the financial information at issue.  While those allegations may show that CBNM failed to competently perform its audit as represented, Plaintiff fails to show that they state a claim for securities fraud.

Moreover, Plaintiff failed to sufficiently plead scienter.  As noted above, scienter exists where there is "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care."  DSAM Global Value Fund, 288 F.3d at 389.  In analyzing the scienter of auditors, the Ninth Circuit has articulated a very high standard:

> [T]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter.  Rather, scienter requires more than a misapplication of accounting principles. The plaintiff must prove that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts.

DSAM Global Value Fund, 288 F.3d at 390 (quoting In re Software Toolworks, Inc., 50 F.3d 615, 627-28 (9th Cir. 1994)).  Plaintiffs

1 "must allege enough information so that a court can discern whether

2 the alleged GAAP violations were minor or technical in nature, or

3 whether they constituted widespread and significant inflation of

4 revenue." Daou Systems, 411 F.3d at 1017 (internal quotations

5 omitted).  In this case, Plaintiff lists alleged accounting violations

6 unaccompanied by any inflation in the revenue figures provided by

7 CBNM.  This is not sufficient to plead scienter.

8      For these reasons, Plaintiff failed to sufficiently plead this

9 claim against CBNM.[9]  Accordingly, because Plaintiff has previously

10 amended the complaint as to CBNM, this claim against CBNM is **DISMISSED**

11 with prejudice.

12      3.   Tahim

13      Plaintiff alleges that Tahim violated the securities laws by

14 issuing an audit report that failed to conform with GAAP standards and

15 was substantially deficient.  (See Joint Opp'n at 7.)  Tahim argues as

16 a threshold matter that the claim is untimely.  (Tahim Mot. at 3-4.)

17 Claims for security fraud must be brought no later than the earlier of

18 (1) two years after the discovery of the facts constituting the

19 violation; or (2) five years after such violation.  28 U.S.C. §

20 1658(b).  Thus, the securities laws include both a two-year statute of

21 limitations (subject to tolling principles) and a five-year statute of

22 repose (not subject to tolling principles).  See Lampf, Pleva,

23

24      [9]  Plaintiff also argues that CBNM may be liable under a scheme
liability theory.  (See Joint Opp'n at 15-16.)  As noted above, scheme
25 liability requires allegations of a deceptive act as part of a larger
scheme to defraud the securities market where that act has the
26 principal purpose and effect of creating a false appearance of fact in
furtherance of the scheme.  Burnett, 561 F. Supp. 2d at 1125.
27 Plaintiff has failed to allege with specificity an actionable
deceptive act purportedly engaged in by CBNM.  Plaintiff also failed
28 to allege sufficient facts supporting a strong inference of scienter.

13

1   Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363 (1991).

2   Here Plaintiff alleges that Tahim issued her audit report on January

3   6, 2004.  (FAC ¶ 49.)   The Complaint was filed more than six years

4   later, on March 10, 2010.  (Complaint (Docket # 1).)[10]

5         Plaintiff's opposition ignores Tahim's argument that the claim is

6   barred by the five-year repose provision.  (See Joint Opp'n at 16

7   (addressing only the two-year statute of limitations, not the five-

8   year statute of repose).)  The five-year statute of repose begins to

9   run on the date of the alleged false representation.  In re Juniper

10  Networks, Inc. Sec. Litig., 542 F. Supp. 2d 1037, 1051 (N.D. Cal.

11  2008); see also Lampf, 501 U.S. at 364 (calculating repose period from

12  date of alleged misrepresentations).  Each false statement constitutes

13  a separate violation, so the five-year period runs separately for each

14  violation when it occurs.  Juniper, 542 F. Supp. 2d at 1051 (citing In

15  re Zoran Corp. Derivative Litig., 511 F. Supp. 2d 986, 1014 (N.D. Cal.

16  2007)).  Plaintiffs may not recover for alleged misrepresentations

17  made prior to the five-year period under a theory of a continuing

18  wrong.  Id.  Accordingly, on its face, the FAC's allegation of

19  wrongdoing by Tahim is untimely, and Plaintiff provided no reason to

20  find otherwise.  Nor does Plaintiff identify any factual allegations

21  that could be made to make the claim timely.  Accordingly, because

22  Plaintiff cannot amend to avoid the five-year statute of repose, this

23  claim against Tahim is **DISMISSED** with prejudice.

24        4.   Richard Day, Patrick Day and ARTCO

25    Richard Day, Patrick Day and ARTCO (collectively, the "Day

26

27        [10]  By March 10, 2005 (five years before the filing of the
complaint), CBNM was responsible for auditing Plaintiff.  (See, e.g.,
28  FAC ¶¶ 48(n), 51-52.)

1   Defendants") also move to dismiss the § 10 claim brought against them.

2   The Day Defendants' alleged involvement in the securities scheme

3   differs from the accountant and attorney Defendants discussed above.

4   Plaintiff alleges that ARTCO, Patrick Day and Richard Day issued

5   legend free shares of Veltex stock:

> ARTCO, which operated as Veltex' [sic] share transfer
> agent, financially benefitted from each such transfer
> it effected.  Defendant Patrick Day, who is the
> President of ARTCO (and whose father, Richard Day, is
> the majority owner of ARTCO, and had been one of
> Veltex's outside securities attorneys), was also a
> Director of Veltex at the same time ARTCO served as
> Veltex' [sic] share transfer agent.  Upon receipt of
> the "authorization letter" from Matin or other of the
> Management Defendants, ARTCO would then issue the
> legend free and unrestricted shares to Wilshire Equity
> or one of the other entities, and they would be sold
> directly on the open market to unsuspecting members of
> the general investing public, or in turn transferred to
> other nominees controlled by Matin and the other
> Management Defendants, who then sold them to the
> public.

15  (FAC ¶ 72; <u>see also</u> FAC ¶¶ 16-18.)  Although not specified by name,

16  Plaintiff also alleges that the various defendants in Plaintiff's

17  management, including Patrick Day, engaged in various other

18  misconduct.  (<u>See, e.g.</u>, FAC ¶¶ 32-34.)  Plaintiff also alleges that

19  Richard Day contacted Bua on at least three occasions to point out

20  inaccuracies in his Rule 504D Letters or request an explanation for

21  the basis of Bua's opinion.  (<u>See</u> FAC ¶¶ 71(b), (c), (e).)

22       As with the accountants and attorney Defendants, the Day

23  Defendants argue that the § 10 claim against them has not been

24  sufficiently pled under the PSLRA.

25                      a.   Patrick Day

26       Plaintiff argues that liability attaches for Patrick Day based on

27  material misrepresentations and omissions in press releases and other

28  statements issued while he was a board member of Veltex.  (<u>See</u> Opp'n

1  to Day Mot. at 14.)   Patrick Day's motion challenges, <u>inter alia</u>, the

2  sufficiency of the FAC's allegations on scienter.   Plaintiff argues

3  that Patrick Day "was able to, and did, control the content" of those

4  press releases and other statements.   (<u>See id.</u>)   Plaintiff cites for

5  support of that proposition its allegation that all "Management

6  Defendants, because of their positions as Officers and/or Directors of

7  Veltex, were able to, and did, control the content of press releases

8  and other public statements pertaining to Veltex."   (FAC ¶ 2; Opp'n to

9  Day Mot. at 6.)

10      Even assuming such a fact was pled sufficiently, Plaintiff failed

11  to properly plead scienter.   Plaintiff argues a strong inference of

12  scienter exists because Patrick Day was a Director of Veltex and

13  President of ARTCO, so he was involved "in the day-to-day operations

14  of both."   (Opp'n to Day Mot. at 16.)   "Where a complaint relies on

15  allegations that management had an important role in the company but

16  does not contain additional detailed allegations about the defendants'

17  actual exposure to information, it will usually fall short of the

18  PLSRA standard."   <u>South Ferry</u>, 542 F.3d at 784.   "As a general matter,

19  'corporate management's general awareness of the day-to-day workings

20  of the company's business does not establish scienter-at least absent

21  some additional allegation of specific information conveyed to

22  management and related to the fraud' or other allegations supporting

23  scienter."   <u>Id.</u> at 784-85.   That type of additional allegation has not

24  been pled in the FAC.

25      As an initial matter, Plaintiff failed to identify detailed

26  factual allegations showing that Patrick Day had an awareness of the

27  day-to-day operation of Veltex.   Even assuming that fact was

28  sufficiently pled in the FAC, however, it is not sufficient to

establish scienter under the PSLRA because the FAC does not include
additional allegations showing information conveyed to Patrick Day
concerning the fraud or other allegations supporting scienter.

Accordingly, this claim against Patrick Day is **DISMISSED** without
prejudice.

c.   Richard Day

Plaintiff's opposition asserts that Richard Day made material
omissions in authorizing the improper issuance of millions of shares
of Veltex stock without a restrictive legend based on Bua's erroneous
Rule 504D Letters. (See Opp'n to Day Mot. at 14-15.)  With respect to
Richard Day's scienter, Plaintiff argues that a strong inference
arises because (1) he corrected some errors in Bua's Rule 504D Letters
and (2) he served as a securities attorney for Veltex in 2006. (See
id. at 16.)  Plaintiff infers from these facts that Richard Day knew
of the alleged fraud and had contacted Bua to ensure that the Rule
504D Letters were free from glaring defects "in an effort to make
ARTCO's distribution of Veltex stocks appear legitimate." (See id. at
7.)  Plaintiff ignores the competing, plausible inference that Richard
Day informed Bua of inaccuracies in his letters because he wanted and
expected the letters on which he relied to be accurate.

As the Supreme Court has recognized, the Court does not determine
the strength of inferences in a vacuum without considering plausible,
nonculpable explanations for a defendant's conduct.  Tellabs, 551 U.S.
at 323-24.  Plaintiff fails to explain why its nefarious inference is
as least as compelling as the harmless competing inference.
Considering all of the allegations in the FAC, the Court does not
believe that Plaintiff's inference is as compelling and, therefore,
finds Richard Day's scienter to be insufficiently pled.  Id. at 324

17

1  (scienter is sufficiently alleged "only if a reasonable person would

2  deem the inference of scienter cogent and <u>at least as compelling as</u>

3  <u>any opposing inference one could draw from the facts alleged</u>."

4  (emphasis added).)

5      Accordingly, the Court **DISMISSES** without prejudice this claim

6  against him.[11]

7                          d.   ARTCO

8      Plaintiff does not identify any basis to hold ARTCO liable

9  separate from the allegations against Patrick and Richard Day.   (<u>See,</u>

10 <u>e.g.</u>, Opp'n to Day Mot. at 14-15 (analyzing purported

11 misrepresentations and omissions of Richard and Patrick Day with no

12 reference to other factual allegations concerning ARTCO).)

13 Accordingly, the claim against ARTCO fails for the reasons identified

14 above and is **DISMISSED** without prejudice.[12]

15     **D.   Sixth and Seventh Causes of Action**

16     CBNM and Tahim request that the Court dismiss the California

17 state law claims against them.   (CBNM Mot. at 10-11; Tahim Mot. at

18     [11]  Plaintiff lastly alleges that it sufficiently pled scheme
19 liability as to the Day Defendants based on the allegations discussed
   above, as well as the allegation that Patrick Day signed two
20 authorizations for the issuance of shares of Veltex stock pursuant to
   Rule 504D.  (<u>See</u> Opp'n to Day Mot. at 11; FAC Ex. 34 at 200, 219.)  As
21 Plaintiff acknowledges, a scheme liability claim requires a showing of
   scienter, among other elements.  (<u>See</u> Opp'n to Day Mot. at 12 n.3.)
22 Scienter has not been sufficiently pled.

23     [12]  The Court notes that some of Plaintiff's arguments regarding
24 the Day Defendants are based on facts not contained in the FAC but
   purportedly supported by evidence provided in declaration form.  The
25 Day Defendants call into doubt the veracity of some of that evidence
   by, for example, noting that some of the documents appear to have been
26 forged or altered.  The Court expresses no opinion at this time
   regarding these additional factual allegations and accompanying
27 evidentiary support.  In light of the Court's granting Plaintiff leave
   to amend, however, the Court reminds Plaintiff of its Rule 11(b)
28 obligations with respect to any new allegations pled.

12.)  The Court may decline to exercise supplemental jurisdiction over state claims following dismissal of all federal claims.  See 28 U.S.C. § 1367(c).

     With respect to Tahim, the Court has dismissed all federal claims against her with prejudice and declines to exercise supplemental jurisdiction as to the state law claims against her.  Accordingly, the state law claims against Tahim are **DISMISSED** without prejudice.

     With respect to CBNM, the Court did not dismiss the § 12 claim against CBNM with prejudice.  Accordingly, the Court finds its request to dismiss the state law claims on this ground premature.  The Court defers ruling on this argument until such time as Plaintiff pleads a viable federal claim against CBNM or the Court dismisses the federal claims against CBNM with prejudice.[13]

**IV.  CONCLUSION**

     For the reasons stated above, the pending motions to dismiss are **GRANTED.**  The § 12 claim is dismissed without prejudice as to Bua, CBNM, Patrick Day, Richard Day and ARTCO, and is dismissed with prejudice as to Tahim.  The § 17(a) claim is dismissed with prejudice as to all moving Defendants.  The § 10 claim is dismissed without prejudice as to Bua, Patrick Day, Richard Day and ARTCO, and is dismissed with prejudice as to Tahim and CBNM.  The state law claims against Tahim are dismissed without prejudice.

---

     [13]  CBNM also substantively challenges the sufficiency of the allegations to state claims under state law.  (CBNM Mot. at 6-10.) The Court will rule on these arguments only if Plaintiff has sufficiently pled a federal claim against CBNM or if the Court determines that it should exercise supplemental jurisdiction over these state law claims despite the absence of a federal claim.

1    Any amended complaint must be filed no later than **October 18,**

2    **2010.**[14]

3

4    **IT IS SO ORDERED.**

5

6    DATED:    9/27/10

7    _____

8                    **AUDREY B. COLLINS**

9    **CHIEF UNITED STATES DISTRICT JUDGE**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

_____

25    [14]   In its reply brief, CBNM requests that the Court make

26    findings regarding compliance with Rule 11(b).  (CBNM Reply at 12.)
      As this was raised for the first time in reply, the Court does not

27    rule on it now.  Moreover, CBNM's request appears premature as the
      statute indicates that such findings should be made "upon final

28    adjudication of the action."  15 U.S.C. 78u-4(c)(1).