BLECHER & COLLINS, P.C.
Maxwell M. Blecher (State Bar No. 26202)
*mblecher@blechercollins.com*
Maryann R. Marzano (State Bar No. 96867)
*mmarzano@blechercollins.com*
Kristen M. Peters (State Bar No. 252296)
*kpeters@blechercollins.com*
515 South Figueroa Street, Suite 1750
Los Angeles, California 90071-3334
Telephone: (213) 622-4222
Facsimile: (213) 622-1656

Attorneys for Plaintiff VELTEX CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA,

## WESTERN DIVISION

| | |
|---|---|
| VELTEX CORPORATION, a Utah Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> JAVEED AZZIZ MATIN, an individual; TANZILA SULTANA, an individual; SAASHA CAMPBELL, an individual; MAZHAR HAQUE, an individual; ALLEN E. BENDER, an individual; VELTEX USA, INC., a Delaware corporation; VELTEX APPAREL, INC., a California corporation; VELTEX INDUSTRIES, INC., a Delaware corporation; VELTEX EXPLORER, INC., a Canadian corporation; VELTEX CANADA, INC., a Canadian corporation; WILSHIRE EQUITY, INC. *aka* WILSHIRE EQUITIES, INC., a Colorado corporation; AMERICAN REGISTRAR & TRANSFER CO., a Utah corporation; PATRICK R. DAY, an individual; RICHARD M. DAY, an individual; MOORE & ASSOCIATES, CHARTERED, a Nevada corporation; MICHAEL J. MOORE, an individual; CHISHOLM, BIERWOLF, NILSON & MORRILL, CPA *aka* CHISHOLM, BIERWOLF & NILSON, LLC, a Utah limited liability company; BRAD B. | CASE NO. CV10 1746 ABC (PJWx) <br><br> **NOTICE OF APPLICATION AND APPLICATION FOR ENTRY OF DEFAULT JUDGMENT BY COURT AGAINST DEFENDANTS JAVEED AZZIZ MATIN, MAZHAR HAQUE, WILSHIRE EQUITY, INC. *aka* WILSHIRE EQUITIES, INC., TANZILA SULTANA, MICHAEL J. MOORE, MOORE & ASSOCIATES, CHARTERED, VELTEX APPAREL, INC., VELTEX INDUSTRIES, INC. AND VELTEX USA, INC.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:  **February 27, 2012** <br> Time:  **10:00 a.m.** <br> Place:  **Courtroom 680** <br>     **Hon. Audrey B. Collins** <br><br> [Filed concurrently with Declarations of Kristen M. Peters and Stephen G. Macklem; and [Proposed] Default Judgment] |

*(vertical text in left margin)* BLECHER & COLLINS  A PROFESSIONAL CORPORATION  ATTORNEYS AT LAW

1 | HAYNES, an individual; ANNE )
2 | TAHIM, an individual; JAAK U. )
   | OLESK, an individual; and CARMINE J. )
3 | BUA, an individual, )
   |                                         )
   |                    Defendants.          )
4 | _____ )

5    **PLEASE TAKE NOTICE THAT** on Monday, February 27, 2012, at 10:00

6  a.m., or as soon thereafter as this matter may be heard by the above-entitled Court,

7  located at the Roybal Building, 255 East Temple Street, Los Angeles, California

8  90012, Plaintiff Veltex Corporation ("Plaintiff" or "Veltex") will present its

9  Application for Entry of Default Judgment Against Defendants Javeed Azziz Matin

10 ("Matin"), Mazhar Haque ("Haque"), Wilshire Equity, Inc. *aka* Wilshire Equities,

11 Inc. ("Wilshire"), Tanzila Sultana ("Sultana"), Michael J. Moore ("Moore"),

12 Moore & Associates, Chartered ("Moore & Associates"), Veltex Apparel, Inc.

13 ("Veltex Apparel"), Veltex Industries, Inc. ("Veltex Industries") and Veltex USA,

14 Inc. ("Veltex USA") (collectively, "Defaulting Defendants").

15    This Application is made upon the following grounds, as set forth more fully

16 in the supporting papers filed and served with this Application:

17    1.    As set forth in the Declaration of Kristen M. Peters, the Defaulting

18 Defendants were each served with a copy of the Summons and Complaint in this

19 action.  The Defaulting Defendants failed to appear or otherwise respond to the

20 Complaint within the time prescribed by the Federal Rules of Civil Procedure.

21    2.    The Clerk of this Court has previously entered the default of Sultana,

22 Moore & Associates, Veltex Apparel and Veltex Industries on June 30, 2010.

23    3.    The Clerk of this Court has previously entered the default of Matin,

24 Haque, Wilshire and Moore on July 2, 2010.

25    4.    The Clerk of this Court has previously entered the default of Veltex

26 USA on November 2, 2010.

27

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

5.      The Defaulting Defendants are not infants or incompetent persons or in military service or otherwise exempted under the Servicemembers Civil Relief Act, 50 App. U.S.C. § 521.

6.      The Defaulting Defendants have not appeared in this action.

7.      Plaintiff is entitled to judgment against the Defaulting Defendants on account of the claims pleaded in the Complaint.  Namely, that Matin, Haque, Sultana, Wilshire Equity, Veltex Apparel, Veltex Industries, Moore, Moore & Associates and Veltex USA knowingly committed securities fraud; that Matin, Haque and Sultana violated Sections 4(a) and 5(b) of the Uniform Fraudulent Transfer Act ("UFTA") and California Civil Code Section 3439.04(a) & (b); and that Matin and Haque conspired to breach and did breach the fiduciary duties owing to Plaintiff.

8.      Notice of this Application for Entry of Default Judgment by Court and the amount requested herein was served on the Defaulting Defendants on February 10, 2012, by U.S. Mail, as required by Central District Local Rules 55-1 and 55-2.

9.      The amount of the judgment sought is the sum of $100,078,621, plus pre-judgment interest, reasonable attorneys' fees, and costs, as set forth in the Declarations of Kristen M. Peters and Stephen G. Macklem, submitted concurrently herewith.  The total judgment claimed by Plaintiff is calculated as follows:

| | | |
|---|---|---|
| (a) | Damages, in the amount of: | $100,078,621.00 |
| (b) | Prejudgment Interest of: | $     751,738.99 ($1,069.33/day) |
| (c) | Attorneys' Fees pursuant to L.R. 55-3 in the amount of: | $    2,005,172.42 |
| (d) | Costs and Expenses of: | $          3,859.95 |
| **TOTAL** | | **$102,839,392.36** |

This Application is based on this Notice, the attached Memorandum of Points and Authorities, the accompanying Declarations of Kristen M. Peters and

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  Stephen G. Macklem filed herewith, the complete files and records of this action,

2  and upon such other evidence as may be presented at the time of hearing on this

3  Application.

4  Dated: February 10, 2012                    Respectfully submitted,

5                                              BLECHER & COLLINS, P.C.
                                               MAXWELL M. BLECHER
6                                              MARYANN R. MARZANO
                                               KRISTEN M. PETERS
7

8                                              By: /s/ Maryann R. Marzano
                                                   MARYANN R. MARZANO
9                                                  Attorneys for Plaintiff
                                                   VELTEX CORPORATION
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Application and Application for Entry of Default Judgment by Court
Case No. CV10 1746 ABC (PJWx)

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  DEFAULT JUDGMENT SHOULD BE GRANTED . . . . . . . . . . . . . . . . . 5

    A.    Plaintiff Has Complied with All Procedural Requirements for Default Judgment to Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.    The Eitel Factors Support Default Judgment . . . . . . . . . . . . . . . . . 6

        1.    Prejudice to Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.    Plaintiff's Claims Are Meritorious and Sufficiency Pled . . . . 8

            a.    Plaintiff Has Sufficiently Alleged a Claim for Securities Fraud Against Defaulting Defendants . . . . . . . . . . . . . 8

            b.    Veltex Has Sufficiently Alleged a Claim for Fraudulent Transfer and Conveyance Against Matlin, Haque and Sultana . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            c.    Plaintiff Has Stated a Claim for Conspiracy to Breach and Breach of Fiduciary Duty Against Matin and Haque . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        3.    The Sum of Money Sought By Plaintiff Is Not Unreasonable 15

        4.    There Is No Dispute As to Material Facts . . . . . . . . . . . . . . 16

        5.    There Was No Excusable Neglect . . . . . . . . . . . . . . . . . . . 17

        6.    The Policy of the Federal Rules Would Be Underminded If Judgment Is Not Granted . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.   THE COURT SHOULD AWARD PLAINTIFF DAMAGES IN THE SUM OF $100,078.621, PLUS PREJUDGMENT INTEREST, ATTORNEYS' FEES AND COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

ACS Recovery Servs., Inc. v. Kaplan,
   No. 09-01304, 2010 WL 144816 (N.D. Cal. Jan. 11, 2010) . . . . . . . . . . . 15

Ambassador Hotel Co., Ltd. v. WeiChuan Investments,
   189 F.3d 1017 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ames v. State Fire Suppression, Inc.,
   227 F.R.D. 361 (E.D.N.Y.2005) . . . . . . . . . . . . . . . . . . . . . . . . . 2

Apollo Capital Fund LLC v. Roth Capital Partners LLC,
   158 Cal. App. 4th 226 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Bennett v. American Medical Response, Inc.,
   No. 05-35475, 2007 WL 900989 (9th Cir. March 27, 2007) . . . . . . . . . . . 19

Chichester v. Mason,
   43 Cal. App. 2d 577 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

City of Hope Nat'l Med. Center v. Genentech, Inc.,
   43 Cal. 4th 375 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Donell v. Kowell,
   533 F.3d 762 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Dura Pharm., Inc. v. Broudo,
   544 U.S. 336, 125 S. Ct. 1627 (2005) . . . . . . . . . . . . . . . . . . . . . . 8

Eitel v. McCool,
   782 F.2d 1470 (9th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . passim

Frankel v. Slotkin,
   984 F.2d 1328 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Herbert v. Lankershim,
   9 Cal. 2d 409 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Cohen,
   199 B.R. 709 (9th Cir. BAP 1996) . . . . . . . . . . . . . . . . . . . . . . . 11

Jones v. H.F. Ahmanson & Co.,
   1 Cal. 3d 93 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

McKnight v. Superior Court,
   170 Cal. App. 3d 291 (1985) . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

ii

*PepsiCo, Inc. v. California Sec. Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*,
   219 F.R.D. 494 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 16

*QWEST Commc'ns Corp. v. Weisz*,
   278 F. Supp. 2d 1188 (S.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Stafford v. Jankowski*,
   338 F. Supp. 2d 1225 (D. Kan. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

*Taylor v. S & M Lamp Co.*,
   190 Cal. App. 2d 700 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*TeleVideo Systems, Inc. v. Heidenthal*,
   826 F.2d 915 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 16

*Wolf v. Superior Court*,
   107 Cal. App. 4th 25 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATUTES, RULES AND REGULATION

17 C.F.R. § 240.10b-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

15 U.S.C. § 78j(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

15 U.S.C. § 78r(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. § 1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

50 App. U.S.C. § 521 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Cal. Civ. Code § 1708 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Civ. Code § 3294(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cal. Civ. Code § 3439.04 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

Cal. Civ. Code § 3439.04(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

Cal. Civ. Code § 3439.04(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Civ. Code § 3439.04(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

Cal. Civ. Code § 3439.05 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Civ. Code § 3439.07 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Civ. Code § 3439.07(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Civ. Code § 3439.07(a)(3)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Civ. Code § 3439.07(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Cal. Civ. Code § 3439.08(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

California Corporations Code § 300 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 54(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

Fed. R. Civ. P. 54(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Civ. P. 55 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 55(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. P. 55(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. P. 55(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 15

L.R. 54-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Local Rule 55-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Local Rule 55-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Local Rule 55-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Utah Code Ann. § 16-10a-101 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Uniform Fraudulent Transfer Act Section 4(a) . . . . . . . . . . . . . . . . . . . . . . . . 11

Uniform Fraudulent Transfer Act Section 5(b) . . . . . . . . . . . . . . . . . . . . . . . . 11

Uniform Fraudulent Transfer Act Section 7(a)(3)(C) . . . . . . . . . . . . . . . . . . . . 12

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Notice of Application and Application For Entry of Default Judgment By Court
Case No. CV10 1746 ABC (PJWx)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Veltex Corporation ("Plaintiff" or "Veltex") hereby submits its Application for Entry of Default Judgment by Court Against Defendants Javeed Azziz Matin ("Matin"), Mazhar Haque ("Haque"), Wilshire Equity, Inc. *aka* Wilshire Equities, Inc. ("Wilshire"), Tanzila Sultana ("Sultana"), Michael J. Moore ("Moore"), Moore & Associates, Chartered ("Moore & Associates"), Veltex Apparel, Inc. ("Veltex Apparel"), Veltex Industries, Inc. ("Veltex Industries") and Veltex USA, Inc. ("Veltex USA") (collectively, "Defaulting Defendants").  As set forth in the Declaration of Kristen M. Peters submitted herewith, Defaulting Defendants have failed to plead or otherwise defend within the prescribed time required by the Federal Rules of Civil Procedure.  The Complaint filed in this action on March 10, 2010, is the pleading as to which the Clerk of this Court entered Defaulting Defendants' defaults on June 30, 2010, July 2, 2010, and November 2, 2010, and is the pleading on which Plaintiff seeks entry of Judgment against Defaulting Defendants.[1]  Accordingly, Plaintiff requests that the Court enter default judgment against Defaulting Defendants on the causes of action alleged in the Complaint and grant the relief sought therein, including awarding Plaintiff damages in the amount of $100,078,621, as set forth in the Declaration of Stephen G. Macklem submitted herewith.[2]

---

[1]   A true and correct copy of the Complaint is attached as Exhibit 1 to the Declaration of Kristen M. Peters ("Peters Decl.") filed concurrently herewith. Although the Clerk of the Court entered the default of Veltex USA as to the First Amended Complaint ("FAC"), filed on July 16, 2010, the FAC did not include any additional allegations regarding Veltex USA.  (Peters Decl. ¶ 15 n.1.)

[2]   Although Federal Rules of Civil Procedure, Rule 54(c) limits the damages recoverable by a plaintiff following a default judgment to the type and quantity of damages demanded in the complaint, a default judgment exceeding the amount of the prayer will be upheld where, as here, the plaintiff served the defaulted defendant with a copy of the Motion for Default Judgment, which specified the amount sought.  Stafford v. Jankowski, 338 F. Supp. 2d 1225, 1228-29 (D. Kan. 2004) (default judgment exceeding amount of prayer upheld where plaintiff served defaulted defendant with copy of motion for default

1

## II.  STATEMENT OF FACTS

This action involves a scheme by Defendants to manipulate Veltex' stock and assets.  Veltex seeks relief under its claims for securities fraud, the Uniform Fraudulent Transfer Act and breach of fiduciary duty.  As detailed in the Declaration of Stephen G. Macklem, submitted herewith, and the Complaint, the scheme involved the issuance of Veltex shares to Matin, his wife, Sultana, Wilshire and purported underwriters controlled by or connected with Matin, for little or no consideration.  The Veltex shares were then resold by Matin and his co-conspirators in the scheme to the general public.  These sales were promoted by a series of misrepresentations as to the purported revenues and assets of Veltex.  The proceeds from the sale of the shares were then converted by Matin and his co-conspirators to their own use or diverted to operating several operating companies controlled by Matin such as Veltex USA, Veltex Apparel and Veltex Industries. The operating companies were held out as subsidiaries of Veltex, but in fact were owned by Matin.

Veltex is a Utah corporation engaged in the sale of wearing apparel in the United States and Canada.  Veltex' stock is publicly traded on the "Pink Sheets," an over-the-counter market, under the symbol VLXC.  Veltex is a non-reporting SEC company which was reorganized on or about August 2009, following dissident shareholder litigation being instituted in Utah, seeking the ouster of

---

judgment, which specified amount sought).  In such a case, the defendant's due process rights are preserved, and a default judgment is proper.  Id.  Here, Defaulting Defendants' due process rights are similarly preserved, as notice of this Application and the amount of the Judgment sought herein was served on Defaulting Defendants on February 10, 2012.  (Peters Decl. ¶ 20.)  Moreover, Plaintiff's Complaint requests "general damages according to the proof at trial *in excess of $35,000,000*."  *See* Compl., Prayer for Relief (emphasis added); *see also* Ames v. State Fire Suppression, Inc., 227 F.R.D. 361 (E.D.N.Y.2005) (holding that Fed. R. Civ. P. 54(c) did not preclude award of damages that accrued during pendency of the action; Fed. R. Civ. P. 54(c) "does not require plaintiff to have demanded a sum certain in order to recover on default").

2

BLECHER ☙ COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   Matin, Defendant Saasha Campbell ("Campbell") and Haque from Veltex'

2   management.  (*See* Compl. ¶ 4.)

3           Matin was the controlling shareholder, and until recently removed from that

4   position, the Chief Executive Officer ("CEO") and Chairman of the Board of

5   Veltex.  Until he was ordered to transfer five million (5,000,000) shares of Veltex

6   common stock that he owned to Wayne H. Hanson, by U.S. District Court Judge

7   Florence-Marie Cooper in the action entitled "*Wayne H. Hanson vs. Veltex*

8   *Corporation, etc., et al.,*" Case No.: CV08-02149 FMC (MANx) (the "Hanson

9   action"), Matin was the largest single shareholder in Veltex.  (*See* Compl. ¶ 5.)

10          Matin functioned as the Chairman of Veltex' Board of Directors and its CEO

11  without any oversight by the Veltex shareholders or an independent Board of

12  Directors until he was removed pursuant to Court Order issued by the Honorable

13  Kate A. Toomey on July 21, 2008, pursuant to an action initiated by dissident

14  Veltex shareholders in Utah State Court in the action entitled: " *Robert Fletcher, et*

15  *al. v. Veltex Corporation, et al.,*" Civil Action No. 080907145 (the "Utah action").[3]

16  (*See* Compl. ¶ 30.)

17          Defendants' scheme involved the issuance of Veltex shares for little or no

18  consideration to insiders, the manipulation of the subsequent market price and the

19  sale of the shares to investors.  Matin embarked on this scheme shortly after he

20  took over the corporation, issuing over Fifty-Seven Million Nine Hundred

21  Seventy-Two Thousand Dollars ($57,972,000) of Veltex shares to himself and his

22  wife, Sultana, without consideration.  (Macklem Decl. ¶¶ 16-18, 23-25.)

23  Subsequently, shares were issued for less than their fair value to purported

24

25          [3]     Matin and Defendants Campbell, Haque, Sultana, Allen E. Bender
26  ("Bender") and Patrick R. Day ("Day") (sometimes collectively referred to herein
    as "Management Defendants") were all members of the Veltex Board of Directors.
27  Campbell, Haque, Sultana, Bender and Day were subject to Matin's control and did
    not functioned as independent Directors. (*See* Compl. ¶¶ 1, 30-65.) Campbell and
28  Haque were removed from their positions as Directors of Veltex on July 21, 2008,
    pursuant to the Order issued by Judge Toomey. (*See* Compl. ¶ 30.)

3

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  underwriters who were actually insiders connected to Matin – after reverse stock

2  splits designed to reduce the number of shares and facilitate the issuance of

3  additional authorized shares.  (Id. ¶ 14.)  Nearly Two Million Two Hundred

4  Thousand Dollars ($2,100,000) of Veltex shares were issued after a 25/1 split and

5  at least another Six Million One Hundred Thousand Dollars ($6,100,000) of shares

6  was issued after a 100/1 split.  (Id. ¶¶ 19-20, 31-32.)  In an obvious move to avoid

7  the middlemen – the insider/underwriters – Matin formed Wilshire and had Veltex

8  issue millions of dollars of Veltex shares to Wilshire for no consideration.  After

9  the 25/1 split, over Three Hundred Thirty Thousand Dollars ($330,000) of Veltex

10  stock was initially issued to Wilshire for little to no consideration and after the

11  100/1 split, another Twenty-One Million Four Hundred Forty-Eight Thousand

12  Dollars ($21,448,000) of Veltex stock was issued to Wilshire for little to no

13  consideration. (Id. at ¶¶ 27-29.)

14      The sale of the stock by Matin, Sultana, Wilshire and the underwriters was

15  promoted by a series of misrepresentations described in the Complaint.  (Compl. ¶¶

16  30-50.)  Further, to the extent Matin, Sultana, Wilshire or the underwriters paid

17  anything to Veltex for their purchase of the Veltex shares, or received any proceeds

18  from the sale of the stock by them that was not converted to their personal use, it

19  was diverted to the operating entities owned by Matin.[4]  (Macklem Dec. ¶¶ 38-39.)

20      As if the self-dealing in Veltex' stock was not enough, Matin admitted in the

21  Hanson action that he used Veltex Funds to purchase three homes for himself,

22  including a 15,000 square foot residence in Diamond Bar, California.  (Compl. ¶

23  51.)  Matin's wife, Sultana, also received payments from Veltex, even though she

24  performed no services for the corporation.  (Id. ¶ 53.)  Of course, these uses of

25

26      [4]    Veltex USA, Inc., Veltex Apparel, Veltex Industries, Veltex Explorer,
27  Inc. ("Veltex Explorer") and Veltex Canada, Inc. ("Veltex Canada") were all
   separate and independent corporations established by, wholly owed by and under
28  the exclusive control of Matin.  Defaulting Defendants utilized these "Veltex"
   named companies as part of the scheme. (See Compl. ¶ 33.)

4

BLECHER &amp; COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   corporate funds were never approved by an independent Board nor disclosed to

2   shareholders.  (Id. ¶¶ 51, 53.)  Further, at least Four Million Dollars ($4,000,000)

3   of inventory and assets that had been held by the operating entities was moved and

4   secreted by Matin and Haque just before a Receiver was appointed in the Utah

5   action; it has never been recovered.  (Macklem Decl. ¶¶ 5, 38.)

6        As a direct and proximate result of Defaulting Defendants' violations of the

7   Federal Securities Laws, fraudulent transfers and conveyances and breaches of

8   fiduciary duties, Plaintiff has suffered damages in the amount of $100,078,621.

9   **III.   DEFAULT JUDGMENT SHOULD BE GRANTED**

10       **A.   Plaintiff Has Complied with All Procedural Requirements for**

11            **Default Judgment to Be Granted**

12       Pursuant to Fed. R. Civ. P. 55(b), a court may enter a default judgment

13   against a defendant following the entry of default by the Clerk of the Court.  *See*

14   PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal.

15   2002).  In the Central District of California, an application for a default judgment

16   must state: (1) when and against what party the default was entered; (2) the

17   identification of the pleading to which default was entered; (3) whether the

18   defaulting party is an infant or incompetent person, and if so, whether that person

19   is adequately represented; (4) that the Servicemembers Civil Relief Act (50 App.

20   U.S.C. § 521) does not apply; and (5) that notice has been served on the defaulting

21   party, if required by Fed. R. Civ. P. 55(b)(2).  *See* C.D. Cal. L. R. 55-1.

22       Plaintiff has satisfied the procedural requirements for obtaining a default

23   judgment, as set forth in Fed. R. Civ. P. 55(a) and (b), as well as Local Rules 55-1

24   and 55-2.  (*See generally* Peters Decl.)  As set forth in the Declaration of Kristen

25   M. Peters, Defaulting Defendants were each served with a copy of the Summons

26   and Complaint in this action.  (*See* Peters Decl. ¶¶ 4-7, 10-13, 15.)  Defaulting

27   Defendants failed to appear or otherwise respond to the Complaint within the time

28   prescribed by the Federal Rules of Civil Procedure.  (Id.)  The Clerk has previously

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  entered the default of Sultana, Moore & Associates, Veltex Apparel and Veltex

2  Industries on June 30, 2010.  (Peters Decl. ¶ 14 and Exh. 20 thereto.)  The Clerk

3  has previously entered the default of Matin, Haque, Wilshire and Moore on July 2,

4  2010.  (Peters Decl. ¶ 9 and Exh. 11 thereto.)  The Clerk has previously entered the

5  default of Veltex USA on November 2, 2010.  (Peters Decl. ¶ 15 and Exh. 24

6  thereto.)  The Complaint filed in this action on March 10, 2010, is the pleading as

7  to which the Clerk entered the defaults of Defaulting Defendants on June 30, 2010,

8  July 2, 2010, and November 2, 2010, and is the pleading on which Plaintiff seeks

9  entry of judgment against Defaulting Defendants.[5]  (Peters Decl. ¶ 16.)  Defaulting

10  Defendants are not infants or incompetent persons.  (Peters Decl. ¶ 17.)  Defaulting

11  Defendants are not in military service or otherwise exempt under the

12  Servicemembers Civil Relief Act, 50 App. U.S.C. § 521.  (Peters Decl. ¶ 18.)

13  Notice of this Application for Entry of Default Judgment by Court was served on

14  Defaulting Defendants on February 10, 2012, by U.S. Mail, as required by Local

15  Rule 55-2.  (*See* Peters Decl. ¶ 20.)

16       Thus, the Court, in its discretion, may order a default judgment against

17  Defaulting Defendants based on the Eitel factors, as outlined below.

18       **B.    The Eitel Factors Support Default Judgment**

19       Entry of a default judgment is governed by Fed. R. Civ. P. 55 and is left to

20  the District Court's sound discretion.  *See* Philip Morris USA, Inc. v. Castworld

21  Prods., Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003).  The Ninth Circuit has

22  enumerated the following factors (collectively, the Eitel factors) that a Court may

23  consider in determining whether to grant default judgment: (1) the possibility of

24  prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the

25  sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the

26

27       [5]      Although the Clerk of the Court entered the default of Veltex USA as
28  to the FAC, filed on July 16, 2010, the FAC did not include any additional
   allegations regarding Veltex USA.  (Peters Decl. ¶ 15 n.1.)

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See* Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir.1986). "In applying this discretionary standard, default judgments are more often granted than denied." Philip Morris USA, 219 F.R.D. at 498 (quoting PepsiCo, 238 F. Supp. 2d at 1174).

Upon entry of default by the Clerk of the Court, the factual allegations of the Complaint are taken as true, except for those allegations relating to damages. *See* TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987). In determining damages, a Court can rely on the declarations submitted by the Plaintiff or order a full evidentiary hearing. *See* Fed. R. Civ. P. 55(b)(2). "Plaintiff's burden in 'proving up' damages is relatively lenient. If proximate cause is properly alleged in the complaint, it is admitted upon default." Philip Morris USA, 219 F.R.D. at 498. Once injury is established, the plaintiff need only prove that the "compensation sought relates to the damages that naturally flow from the injuries pled." Id.

As set forth below, default judgment is appropriate because Plaintiff has satisfied both the procedural requirements and the substantive Ninth Circuit standard for this Court to exercise its discretion. Specifically, (1) there is a great risk of prejudice to Plaintiff if a default judgment is not issued; (2) Plaintiff's Complaint is meritorious and sufficiently pled; (3) there is no dispute as to the material facts; (4) there is no excuse for Defaulting Defendants' failure to respond or appear in this action; and (5) a decision on the merits is impractical, if not impossible. *See* Eitel, 782 F.2d at 1471-72; PepsiCo, 238 F. Supp. 2d at 1174.

### 1.   **Prejudice to Plaintiff**

The first Eitel factor weighs in favor of granting Plaintiff's request for an award of monetary damages because if default judgment is not entered, Plaintiff

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  "will likely be without recourse for recovery." <u>PepsiCo</u>, 238 F. Supp. 2d at 1177.

2        **2.**      **Plaintiff's Claims Are Meritorious and Sufficiency Pled**

3        The second two <u>Eitel</u> factors "require that a plaintiff state a claim on which

4  the [plaintiff] may recover." <u>PepsiCo</u>, 238 F. Supp. 2d at 1175 (citations and

5  quotations omitted). If the complaint meets these requirements, the party seeking a

6  default judgment is entitled to relief. <u>Id</u>. Once a default has been entered by the

7  Court Clerk, as it has in this case, all well-pleaded facts in the complaint are taken

8  as true, except those relating to damages. <u>TeleVideo Sys.</u>, 826 F.2d at 917-18.

9        Here, Plaintiff has filed a well-pleaded Complaint as required by the Federal

10  Rules of Civil Procedure. Plaintiff has alleged sufficient facts to state claims

11  against Defaulting Defendants for (1) Securities Fraud; (2) Fraudulent Transfer and

12  Conveyance; and (3) Conspiracy to Breach and Breach of Fiduciary Duty.

13  Accordingly, this factor favors entry of default judgment against Defaulting

14  Defendants.

15          **a.**      **Plaintiff Has Sufficiently Alleged a Claim for**

16                **Securities Fraud Against Defaulting Defendants**

17        Plaintiff's Complaint sufficiently alleges a claim for Securities Fraud in

18  violation of Section 10b-5 of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-

19  5 promulgated thereunder, 17 C.F.R. § 240.10b-5.[6] These provisions give rise to

20  "a private damages action, which resembles, but is not identical to, common-law

21  tort actions for deceit and misrepresentation." <u>Dura Pharm., Inc. v. Broudo</u>, 544

22  U.S. 336, 341, 125 S. Ct. 1627, 1631 (2005); <i>see also</i> <u>Frankel v. Slotkin</u>, 984 F.2d

23  1328, 1333-34 (1993) ("[A] corporation is injured when it is fraudulently induced

24

---

25        [6]     Section 10(b) of the Exchange Act forbids (1) the "use or

26  employ[ment] . . . of any . . . deceptive device," (2) "in connection with the
purchase or sale of any security," and (3) "in contravention of" Securities and

27  Exchange Commission ("SEC") "rules and regulations." 15 U.S.C. § 78j(b). Rule
10b-5 forbids, among other things, the making of any "untrue statement of a

28  material fact" or the omission of any material fact "necessary in order to make the
statements made . . . not misleading." 17 C.F.R. § 240.10b-5.

8

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  into issuing its own securities for less than their fair value because of

2  misappropriation of inside information.  Though a corporation's minority

3  shareholders are also injured by dilution of their interests in the corporation, the

4  corporation itself as seller of its own securities suffers an independent injury

5  sufficient to support an action for damages, derivative or otherwise, under section

6  10(b) and rule 10b-5.").

7  　　　Here, in support of its securities fraud claim, Plaintiff alleges that:

8  　　　(1)　Defaulting Defendants caused Veltex to issue millions of shares of

9  unrestricted (freely tradeable) common stock.  These shares were sold into a public

10  market utilizing several shell entities under the control of Matin or persons acting

11  in concert with him.  These shares were not registered with the SEC or any state

12  regulatory authority.

13  　　　(2)　These shares were authorized by the Board of Directors, who were

14  subject to Matin's control and did not function as independent Directors, in

15  furtherance of the fraudulent scheme and no effort was made to assure that the

16  issuance was in compliance with applicable federal and state securities laws.

17  　　　(3)　The shares were issued for zero or inadequate consideration.

18  　　　(4)　As part of the fraudulent scheme, Matin and his co-conspirators issued

19  a series of false and misleading press releases during the relevant period.  These

20  press releases were false and misleading in that either (a) they contained false

21  information or (b) they did not contain all information necessary to make the

22  statements made not false and misleading.

23  　　　(5)　Specifically, Matin and his co-conspirators made, among others, the

24  following false or misleading material statements: (a) the Management Defendants

25  misrepresented Veltex' revenues and profits to Veltex' shareholders and the

26  general investing public (*see* Compl. ¶¶ 32-33, 59); (b) the Management

27  Defendants made inconsistent and misleading statements as to the number of

28  outstanding shares of Veltex (*see* id. ¶¶ 35, 59); (c) the Management Defendants

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

9

misrepresented the ownership of textile manufacturing facilities in Bangladesh, (*see* id. ¶¶ 38-40, 61); (d) the Management Defendants made misrepresentations about the sale of the Bangladesh manufacturing facilities (*see* id. ¶¶ 41-47); and (e) the Management Defendants misrepresented that Veltex was having audited financials prepared (*see* id. ¶¶ 48-50, 60-61).

(6)     Matin was responsible for the false and misleading information in that either (a) he directly promulgated it and/or (b) was a person in control of the company.

(7)     Matin and Defaulting Defendants knew his statements were false.

(8)     The statements were promulgated with the intent to affect the price of Veltex stock.

(9)     The fraudulent statements were promulgated utilizing instrumentalities of interstate commerce, including the mails, interstate telephone, wire and the Internet.

(10)    Matin and his co-conspirators either directly, or through intermediary shell corporations, purchased and sold Veltex common stock to the public, Defaulting Defendants profited from these purchases and sales.

(11)    The stock purchases and sales generated by Matin and his co-conspirators were based on information known to Defaulting Defendants and persons acting in concert with them and not disclosed to third-party purchasers.

(12)    Matin was the "mastermind" behind the unlawful scheme and plan, and with scienter participated in its accomplishment.

(13)    No disclosure has ever been made by Matin, the Management Defendants, or any of the other Defendants of the foregoing false and misleading facts and events to the investing public, and no effort whatsoever was ever made to correct the misleading and blatantly inaccurate information that was provided in the Veltex press releases and other offering materials over a several year period, which was integral to the perpetration and success of the stock scheme.

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    (14)   As a direct and proximate cause of the Defaulting Defendants'

2  misrepresentations and omissions, the stock and going concern value of Veltex has

3  been diminished and eviscerated in an amount of at least $100,078,621, as set forth

4  in the Declaration of Stephen G. Macklem filed herewith.

5    The above-referenced facts sufficiently set forth Plaintiff's claim against

6  Defaulting Defendants for securities fraud.

7    **b.    Veltex Has Sufficiently Alleged a Claim for**

8    **Fraudulent Transfer and Conveyance Against Matin,**

9    **Haque and Sultana**

10    Plaintiff's Complaint sufficiently alleges a claim for Fraudulent Transfer and

11  Conveyance in violation of Sections 4(a) and 5(b) of the Uniform Fraudulent

12  Transfer Act ("UFTA"), California Civil Code § 3439.04(a) and (b), against Matin,

13  Haque and Sultana.  The UFTA is to be liberally construed to affect its purpose,

14  which is to prevent debtors from placing their assets beyond the reach of creditors.

15  *See* Chichester v. Mason, 43 Cal. App. 2d 577, 584 (1941).  California Civil Code

16  § 3439.04 provides that a transfer is fraudulent as to a creditor whether his claim

17  arose before or after the transfer, if the debtor made the transfer (a) with an actual

18  intent to hinder, delay or defraud any creditor or (b) without receiving reasonably

19  equivalent value in return and the debtor intended to or reasonably believed that he

20  would incur debts beyond his ability to pay as they came due.  *See* Monastra v.

21  Konica Bus. Machs., 43 Cal. App. 4th 1628, 1635 (1996); *see also* McKnight v.

22  Superior Court, 170 Cal. App. 3d 291, 215 (1985).[7]

23    The remedies available to a wronged creditor include, among others, (a)

24  avoidance of the transfer or obligation to the extent necessary to satisfy the

25  creditor's claim, and (b) ***any other relief the circumstances may require***.  *See* Cal.

26

27    [7]    Actual intent to hinder, delay or defraud is determined to exist as a
matter of law where, as here, Defaulting Defendants were engaging in stock fraud.
28  *See, e.g.,* In re Cohen, 199 B.R. 709, 717 (9th Cir. BAP 1996).

11

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   Civ. Code § 3439.07(a)(1) and (c) (emphasis added).  Similarly, California Civil

2   Code § 3439.08(b)(1) states that in cases where the transfer is voidable, judgment

3   may be had against the transferees of the asset and "the person for whose benefit

4   the transfer was made."

5          In McKnight v. Superior Court, 170 Cal. App. 3d at 215, the Court observed

6   that because an intent or scheme to defraud creditors is peculiarly within the

7   transferor and transferee's knowledge, it must be determined by the circumstantial

8   evidence presented in the case.  The Court deemed the material allegations of a

9   complaint sufficient to establish a *prima facie* case of a fraudulent transfer of real

10  property from a husband to his wife.  One of the factors observed by the Court with

11  respect to circumstantial evidence was simply the defendants' close relationship.

12  As the Court stated, when the transferee participates in the fraudulent transfer

13  "with knowledge or intent to assist the transferor to defraud or hinder his creditors,

14  the conveyance is fraudulent even if full consideration is given."  Id. at 299.

15         By failing to respond to the Complaint, Matin, Haque and Sultana have

16  admitted their fraudulent conveyance and misappropriation of Veltex shares and

17  other assets under California Civil Code Sections 3439.04(a)(2) or 3439.05.

18  Further, because Matin, Sultana and Haque are in default, Plaintiff has no

19  meaningful opportunity to engage in discovery and therefore has no ability to trace

20  the number and extent of transfers to Sultana and others who have utilized

21  Plaintiff's funds.[8]  Under Section 7(a)(3)(C) of the UFTA, California Civil Code §

22  3439.07(a)(3)(C), the Court is authorized to award Veltex "[a]ny other relief the

23

24         [8]      It is well established that a debtor and those who conspire with him to
     conceal his assets for the purpose of defrauding creditors commit a tort, and each is

25  liable in damages.  Cal. Civ. Code §§ 1708, 3439.07; Taylor v. S & M Lamp Co.,
     190 Cal. App. 2d 700 (1961); QWEST Commc'ns Corp. v. Weisz, 278 F. Supp. 2d

26  1188 (S.D. Cal. 2003).  Indeed, participation in a conspiracy to commit a tort
     extends liability beyond the principals who actually committed the tort to each of

27  the co-conspirators.  Id.; see also Monastra, 43 Cal. App. 4th at 1644-45
     (participation in a conspiracy to hinder and delay a creditor from recovering upon

28  claims against a debtor renders such conspirators jointly liable with the debtor for
     the creditor's judgment).

                                                    12

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  circumstances may require."  Accordingly, as set forth in further detail in the

2  Declaration of Stephen G. Macklem, Plaintiff requests that the Court award money

3  damages to Veltex in the amount of $100,078,621, representing Veltex' total

4  damages as the result of the fraudulent conveyance, transfer and conversion of

5  Veltex' stock and inventory to their own use.

        c.   **Plaintiff Has Stated a Claim for Conspiracy to Breach**

6

7                **and Breach of Fiduciary Duty Against Matin and**

8                **Haque**

9  Plaintiff's Complaint sufficiently alleges a claim for Conspiracy to Breach

10  and Breach of Fiduciary Duty against Matin and Haque.  Specifically, their

11  conduct, as alleged in the Complaint, constitutes a common law claim for breach of

12  fiduciary duty under the laws of the States of California and Utah.[9]  Their conduct

13  is also in violation of specific California and Utah statutes related to corporate

14  governance and management, including but not limited to, Section 300 *et seq.* of

15  the California Corporations Code and the Utah Revised Business Corporation Act,

16  Utah Code Ann. § 16-10a-101 *et seq.*

17  In his capacity as the controlling shareholder and CEO and Chairman of the

18  Board of Veltex during the relevant period, Matin stood in a fiduciary relationship

---

20  [9]  "In order to plead a cause of action for breach of fiduciary duty, a plaintiff must show the existence of a fiduciary relationship, its breach, and

21  damage caused by the breach." Apollo Capital Fund LLC v. Roth Capital Partners LLC, 158 Cal. App. 4th 226, 244 (2007).  "A fiduciary relationship is 'any relation

22  existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party.'" Wolf v.

23  Superior Court, 107 Cal. App. 4th 25, 29 (2003) (quoting Herbert v. Lankershim, 9 Cal. 2d 409, 483 (1937)).  A fiduciary owes a duty of "undivided loyalty" to its

24  beneficiary, and is subject to "fiduciary obligations far more stringent than those required of ordinary contractors." Id.  Before a person can be charged with a

25  fiduciary obligation, he "must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that

26  undertaking as a matter of law." City of Hope Nat'l Med. Center v. Genentech, Inc., 43 Cal. 4th 375, 386 (2008).  Directors and majority shareholders of a

27  corporation stand in a fiduciary relationship of trust and confidence with the corporation and its shareholders. *See* Wolf, 107 Cal. App. 4th at 29; *see, e.g.,*

28  Jones v. H.F. Ahmanson & Co., 1 Cal. 3d 93, 108-09 (1969) (controlling shareholder of corporation).

13

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  of trust and confidence with the corporation, Veltex, and its shareholders. (*See*

2  Compl. ¶¶ 5, 81.) Haque, as the Chief Financial Officer ("CFO") and member of

3  the Board of Directors of Veltex since at least 2007, also stood in a fiduciary

4  relationship of trust and confidence with the corporation, Veltex, and its

5  shareholders. (*See* id. ¶¶ 8, 81.) As a result, Matin and Haque owed fiduciary

6  duties of undivided due care and loyalty to Veltex. (*See* id. ¶¶ 80-83.) Matin and

7  Haque were required to serve in good faith, and in the best interests of the

8  corporation and its shareholders, and with such care as an ordinarily prudent

9  person in a like position would use under similar circumstances. Matin was

10  specifically precluded from engaging in intentional misconduct or knowing

11  violations of the law; conduct that was contrary to Veltex' or its shareholder's best

12  interests or involved an absence of good faith; transactions in which he derived an

13  improper personal benefit; reckless disregard for his duty to Veltex or its

14  shareholders when he was aware or should have been aware of the wrongful

15  conduct by other officers, directors or other professionals performing services on

16  behalf of Veltex and the risk of serious injury to Veltex and its shareholders being

17  caused thereby; inexcusable inattention, amounting to an abdication of duty to

18  Veltex and its shareholders; entering into or condoning transactions in which he or

19  other corporate officers or directors have a conflict of interest; and engaging in or

20  condoning prohibited corporate loans or distributions. (*See* Compl. ¶ 81.) Matin

21  and Haque were obligated, among other things, to place Veltex' and its

22  shareholders' interests ahead of any other business or personal interests; being a

23  party to any false statement or entry in the corporate records or to any exaggerated

24  report or other document which would tend to give Veltex greater value than it

25  actually possesses; and knowingly and wilfully issuing shares in violation of the

26  law with the intent to defraud future shareholders or creditors. (*See* id. ¶ 82.)

27      Matin and Haque breached their fiduciary duties by causing Veltex to

28  engage in, submit to and approve the conduct and transactions described in the

14

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  Complaint with respect to actions which caused the dilution of the stock of
2  common shares and the value of Veltex as a going concern, all to the detriment of
3  Veltex, and for the sole and exclusive benefit of Defendants.  Matin, as Chairman
4  of the Board of Veltex, suffered from egregious conflicts of interests and engaged
5  in self-dealing which prevented him from exercising independent judgment.
6  Matin's conduct also did not comply with the requirements of the business
7  judgment rule.  In diluting the value of Veltex shares, raiding corporate assets and
8  diminishing the overall value of the corporation, Matin and Haque failed to act
9  with the degree of diligence, care, loyalty and skill ordinary prudent persons would
10  exercise under similar circumstances in like positions.  (*See* Compl. ¶ 84.)

11      As a direct and proximate result of Defendants' breaches of fiduciary duties,
12  Veltex has suffered damages in the amount of $100,078,621, as set forth in the
13  Declaration of Stephen G. Macklem.

14          **3.      The Sum of Money Sought by Plaintiff Is Not Unreasonable**
15      Under the fourth Eitel factor, "the court must consider the amount of money
16  at stake in relation to the seriousness of Defendant's conduct."  PepsiCo, 238 F.
17  Supp. 2d at 1176.  "If the sum of money at issue is reasonably proportionate to the
18  harm caused by the defendant's actions, properly documented, and contractually
19  justified, then default judgment is warranted."  ACS Recovery Servs., Inc. v.
20  Kaplan, No. 09-01304, 2010 WL 144816, at *6 (N.D. Cal. Jan. 11, 2010).  In
21  determining damages, a court can rely on the declarations submitted by the
22  plaintiff.  *See* Fed. R. Civ. P. 55(b)(2).  Here, Matin masterminded and, with the
23  conscious support of his co-conspirator Defaulting Defendants, carried out an
24  unlawful scheme that resulted in major losses to Plaintiff and investors.  Plaintiff is
25  asking for damages in the amount of $100,078,621, which is meant to place
26  Plaintiff in the position it would have been in had Defaulting Defendants not
27  committed acts of fraud, theft and conspired to breach and breached his fiduciary
28  duties to Veltex.  (*See generally* Macklem Decl.)  As a direct and proximate result

15

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  of Defaulting Defendants' fraudulent conveyance, transfer and conversion of

2  Veltex' stock and inventory to their own use, Veltex has suffered damages in the

3  amount of $100,078,621. (*See generally* Macklem Decl.) This is not a large sum

4  under the circumstances, as courts have routinely held that out-of-pocket losses is

5  an appropriate measure of damages for fraud. *See* Ambassador Hotel Co., Ltd. v.

6  WeiChuan Investments, 189 F.3d 1017, 1030 (9th Cir. 1999). That amount is

7  additionally supported by Exhibit A to the Declaration of Stephen G. Macklem,

8  which shows the number of stock transactions that have resulted in Defaulting

9  Defendants' gain. (Macklem Decl. ¶¶ 11-18, 27-34, 40-41, 43 and Exh. A thereto.)

10  Thus, the damages Plaintiff seeks are proportionate to the harm Defaulting

11  Defendants caused and are properly documented. Moreover, given the duration

12  and egregious nature of Defaulting Defendants' misconduct, a default judgment in

13  the amount of $100,078,621 is reasonable. As such, this factor also favors entry of

14  default judgment against Defaulting Defendants.

15  ### 4.   There Is No Dispute As to Material Facts

16  As to the fifth Eitel factor, by defaulting, Defaulting Defendants are deemed

17  to have admitted all factual allegations contained in the Complaint except those

18  relating to damages. Televideo Sys., 826 F.2d at 917-18; *see also* Philip Morris

19  USA, 219 F.R.D. at 500 (defendants' failure to answer constitutes an admission of

20  the allegations in the complaint, and thus the possibility of dispute in material facts

21  is considered remote); PepsiCo, 238 F. Supp. 2d at 1177 (no genuine possibility of

22  dispute regarding material facts where defendant has failed to answer). Indeed,

23  there is no challenge to Plaintiff's factual averments, which are supported by

24  documents and declarations, because Defaulting Defendants have refused to

25  participate in this action notwithstanding their direct personal knowledge that they

26  are named as defendants. This factor therefore favors granting default judgment.

27

28

5.      **There Was No Excusable Neglect**

As to the sixth factor, Defaulting Defendants' default was not excusable. Defaulting Defendants were properly served with the Summons and Complaint, as well as the request to the Clerk of the Court for entry of default and the instant Application for Entry of Default Judgment. (*See* Peters Decl. ¶¶ 4-7, 10-13, 15, 20.) Defaulting Defendants had the opportunity to appear to defend against Plaintiff's claims and to oppose Plaintiff's request for entry of default, but failed to do so. There is nothing in the record indicating that Defaulting Defendants' failure to appear and defend was the result of excusable neglect. For instance, Matin's former counsel, Olesk, a co-defendant in this action, answered the Complaint and Matin's wife accepted service of the Complaint and Summons on Matin's behalf, thus establishing Matin's awareness of the Complaint. Therefore, there is no doubt that the default did not result from excusable neglect, but rather from willful disobedience as evidenced by the failure of Defaulting Defendants to remove the default. Thus, this factor weighs in favor of entry of default judgment.

6.      **The Policy of the Federal Rules Would Be Undermined If Judgment Is Not Granted**

The final *Eitel* factor examines whether the policy of deciding a case based on its merits precludes entry of default judgment. In *Eitel*, the Ninth Circuit acknowledged that the general rule is that default judgements are ordinarily disfavored and that courts should decide cases on their merits whenever possible. *See Eitel*, 782 F.2d at 1472. However, this factor is not dispositive, and the Court has "great latitude in exercising its discretion with regard to the relative weight of the remaining *Eitel* factors." *PepsiCo*, 238 F. Supp. 2d at 1177.

Here, Defaulting Defendants, by their own actions in failing to answer Plaintiff's Complaint, make a decision on the merits impractical, if not impossible. *See PepsiCo*, 238 F. Supp. 2d at 1177. This is precisely what has occurred in the instant case. Defaulting Defendants made a conscious choice not to participate in

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    this lawsuit.  There is no remedy other than default.  Accordingly, because

2    Defaulting Defendants have failed to participate in the proceedings brought against

3    them, despite adequate and repeated notice and opportunity to do so, default

4    judgment is appropriate.

5    **IV.    THE COURT SHOULD AWARD PLAINTIFF DAMAGES IN THE**

6    **SUM OF $100,078,621, PLUS PREJUDGMENT INTEREST,**

7    **ATTORNEYS' FEES AND COSTS**

8    The Clerk has entered default against Defaulting Defendants.  The

9    allegations in the Complaint are now deemed admitted.  Therefore, as set forth in

10   the Declarations of Kristen M. Peters and Stephen G. Macklem, Plaintiff

11   respectfully requests that the Court grant default judgment against Defaulting

12   Defendants and award damages to Plaintiff in the sum of $100,078,621, plus

13   prejudgment interest, attorneys' fees and costs as follows:

14   (a)    Damages, in the amount of:        $100,078,621.00

15   (b)    Prejudgment Interest[10] of:      $      751,738.99 ($1,069.33/day)

16   (c)    Attorneys' Fees pursuant

17   to L.R. 55-3[11] in amount of:      $    2,005,172.42

18   _____

19   [10]    Section 1961 of Title 28 provides for interest to accrue on judgments
     entered in federal court from the date of entry at the rate specified in the statute.

20   The award of prejudgment interest is generally in the discretion of the Court.  *See*
     Donell v. Kowell, 533 F.3d 762, 772 (9th Cir. 2008) (prejudgment interest may be

21   awarded from the date each fraudulent transfers were made).  Because applicable
     law permits prejudgment interest from the date of the transfers, here, it is

22   reasonable for the Court to award prejudgment interest from March 10, 2010, the
     date of filing of the lawsuit.  The Declaration of Kristen M. Peters sets forth the

23   federal statutory rate applicable on the date of filing of the lawsuit and the interest
     accruing on the damages amount through February 10, 2012, and the per diem rate

24   accruing thereafter pursuant to 28 U.S.C. § 1961.  (*See* Peters Decl. ¶ 17.)

25   [11]    Plaintiff is entitled to attorneys' fees pursuant to 15 U.S.C. § 78r(a).
     Central District Local Rule 55-3 directs the Court to calculate attorneys' fees

26   according to a schedule if allowed by applicable statute.  For awards greater than
     $100,000.00, the attorneys' fees are calculated at $5,600.00 plus 2% of the amount

27   over $100,000.00, or: [Total Award - $100,000] * [0.02] + $5,600.  Application of
     the formula to this case gives: [$100,078,621 - $100,000]*[0.02] + $5,600 =

28   $2,005,172.42.  Thus, applying the schedule to the amount of the judgment
     exclusive of costs, Plaintiff is entitled to $2,005,172.42 in attorneys' fees. (Peters

18

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    (d)    Costs and Expenses[12] of:         $         3,859.95

2    **TOTAL**                                 **$102,839,392.36**

3         In addition, Plaintiff requests punitive damages against Defaulting

4    Defendants in an amount sufficient to punish, deter and make an example of

5    them.[13]

6    **V.    CONCLUSION**

7         As has been shown above, Plaintiff has met its pleading burden to establish

8    the liability of Defaulting Defendants in this case under the rule that in a default

9    prove up, all well-pleaded allegations must be accepted as true, except those

10   dealing with damages.  Plaintiff has offered the Declaration of Stephen G.

11   Macklem to prove damages.  In light of the above, Plaintiff respectfully requests

---

Decl. ¶ 16.)

[12]    Plaintiff is entitled to costs under Fed. R. Civ. P. 54(d).  Within fifteen (15) days after the entry of judgment, Plaintiff will electronically file a Notice of Application to the Clerk to Tax Costs and [Proposed] Bill of Costs on Form CV-59.  *See* L.R. 54-3.

[13]    Punitive damages may be awarded as part of a default judgment award.  *See, e.g.,* Bennett v. American Medical Response, Inc., No. 05-35475, 2007 WL 900989 (9th Cir. March 27, 2007), and are available "[i]n an action for the breach of an obligation not arising from contract" upon a finding of "oppression, fraud, or malice." Cal. Civ. Code § 3294(a).  Accordingly, because Defaulting Defendants acted with malice, oppression, or fraud, Plaintiff may recover punitive damages against them.

19

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    that the Court enter judgment for Plaintiff in the amount of $100,078,621, plus

2    prejudgment interest, attorneys' fees and costs.

3

4    Dated:   February 10, 2012

5                                                Respectfully submitted,

6                                                BLECHER & COLLINS, P.C.
                                                 MAXWELL M. BLECHER
7                                                MARYANN R. MARZANO
                                                 KRISTEN M. PETERS
8

9                                                By:  /s/ Maryann R. Marzano
10                                                     MARYANN R. MARZANO
                                                       Attorneys for Plaintiff
11                                                     VELTEX CORPORATION

12   49596.2

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20